ANOKA ORTHOPAEDIC ASSOCIATES, P.A.; Anoka Orthopaedic Associates, P.A. Employees' Defined Benefit Pension Plan and Trust; Anoka Orthopaedic Associates, P.A. Employees' Money Purchase Plan and Trust; Dr. Charles J. Cooley; Dr. John E. Wallestad; and Dr. Philip H. Haley, Plaintiffs,

v.

John G. MUTSCHLER and John G. Mutschler & Associates, Inc., Defendants.

Edward J. LECHNER and E.J. Lechner J.D., Ltd., Defendants and Third–Party Plaintiffs,

v.

Dr. Charles J. COOLEY; Dr. John E. Wallestad; Dr. Philip H. Haley; Mr. Ronald E. Flo; and Anoka Orthopaedic Associates, P.A., Third–Party Defendants,

and

Continental Insurance Company and Fidelity Casualty Company of New York, Intervenors.

Civ. No. 4–86–539.

United States District Court, D. Minnesota, Fourth Division.

Sept. 25, 1991.

Brian Patrick Short, Minneapolis, Minn., Fred M. Soucie, Soucie & Buchman, Anoka, Minn., James Patrick Mulvahill, Mulvahill Law Office, Minneapolis, Minn., for plaintiffs.

John Richard Bland, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, Minn., for third-party defendants.

Tony Raymond Krall, Julianne M. Fiedler, Hanson, Lulic & Krall, Minneapolis, Minn., for intervenors.

Phillip Allen Cole, Lommen Nelson Cole & Stageberg, Minneapolis, Minn., for Ed-ward J. Lechner and E.J. Lechner, J.D., Ltd.

Robert F. Henson, Roy Ginsburg, Henson & Efron, Minneapolis, Minn., for defendants John G. Mutschler and John G. Mutschler & Associates, Inc.

Ronald E. Flo, trustee.

## ORDER

DOTY, District Judge.

This matter is before the court on the following motions:

1. Plaintiffs' motion in limine and motion for partial summary judgment;

2. Defendants' motion in limine, motion to dismiss for failure to state a claim on which relief may be granted, motion for lack of subject matter jurisdiction and motion for partial summary judgment.

Based on a review of the file, record and proceedings herein, the court:

1. Grants in part and denies in part plaintiffs' motion for partial summary judgment;

2. Grants defendants' motion to dismiss the state law claims of Anoka Orthopaedic Associates, P.A. and its three benefit plans for lack of subject matter jurisdiction;

3. Denies defendants' motion for partial summary judgment;

4. Denies in part and stays in part defendants' motion to dismiss for failure to state a claim on which relief may be granted; and

5. Stays decision on the parties' motions in limine.

## BACKGROUND

Plaintiffs in this case are Anoka Orthopaedic Associates, P.A. ("AOA"); its three employee benefit plans, the Defined Benefit Pension Plan and Trust, the Profit Sharing Plan and Trust, and the Money Purchase Plan and Trust ("Plans"); and the three shareholders of AOA, Drs. Charles J. Cooley, John E. Wallestad and Philip H. Haley ("doctors"). The doctors are also employees of AOA and acted in various

capacities on behalf of the Plans: as trustees, beneficiaries and participants.[1]

Defendant Edward J. Lechner and his law firm, E.J. Lechner J.D., Ltd. (collectively "Lechner"), drafted the three Plans and provided legal services to AOA from the fall of 1975 until January 1986. Defendant John G. Mutschler and his accounting firm, John G. Mutschler & Associates, Inc. (collectively "Mutschler"), provided various administrative and accounting services for the Plans. Kati Farnham, one of Mutschler's employees, performed most of the administrative functions. Lechner and Mutschler (collectively "defendants") also prepared year-end financial statements and IRS filings for the Plans.

This lawsuit arises out of the acts of Ronald E. Flo ("Flo"), who worked as AOA's business manager and accountant from 1974 to 1986. Flo also acted as the principal investment advisor to the doctors in their capacity as trustees of the Plan. Flo requested that checks to the Plans be made payable to him personally or to his business. Flo purported to invest those funds in certificates of deposit and issued statements to the trustees, Lechner and Mutschler reflecting those investments. Flo, however, converted the funds and never invested in any certificates of deposits. Between 1979 and 1985, Flo embezzled $499,727 from the Plans.[2]

The doctors claim that they discovered Flo's theft after asking Lechner to investigate Flo in early 1986. In January 1986, shortly after his investigation, the doctors terminated Lechner as legal counsel.

On July 7, 1986, the doctors, the Plans and AOA ("plaintiffs") commenced the present action. Plaintiffs asserted ERISA claims and various state law claims relying on pendent jurisdiction.

On March 20, 1989, the court granted defendants' motion for partial summary judgment and dismissed all of plaintiffs' ERISA claims, holding that neither Lechner nor Mutschler were fiduciaries for purposes of ERISA. 709 F.Supp. 1475. The Eighth Circuit affirmed the dismissal on the grounds that Lechner and Mutschler were not ERISA fiduciaries. *Anoka Orthopaedic Assocs., P.A. v. Lechner,* 910 F.2d 514, 517–18 (8th Cir.1990). By order dated April 25, 1991, the court retained jurisdiction over plaintiffs' pendent state law claims for legal and accounting malpractice.

Lechner moves the court for relief on various issues.[3] First, Lechner contends that the court lacks subject matter jurisdiction of the state law claims asserted by AOA and the Plans. Lechner also seeks to dismiss the doctors' state law claims, arguing that the doctors, in their role as beneficiaries, have no standing to assert professional malpractice claims on behalf of the trust. Lechner moves for a ruling that defendants' negligence should be compared to any negligence of the three doctors, AOA or its agents under either the doctrine of contribution or Minn.Stat. § 604.01. Lechner further moves for partial summary judgment on the issue of whether the six-year statute of limitations for legal malpractice bars recovery for any damages incurred prior to July 7, 1980. Lechner also seeks a determination of whether plaintiffs may recover damages for either prejudgment interest or lost investment income. Finally, Lechner brings a motion in limine to exclude as irrelevant and preju-

---

1. Plaintiffs' complaint alleges that:
    1. [The Plans] are ERISA employee benefit plans of [AOA]....
    2. [AOA] is a Minnesota professional corporation.... engaged in the business of providing medical services in the field of orthopaedic medicine.
    3. Plaintiffs Dr. Charles J. Cooley, Dr. John E. Wallestad, and Dr. Philip H. Haley ... are shareholders and employees of Anoka Orthopaedic and participants and beneficiaries of the Plans.
    ....

6. This court has jurisdiction over this action in that it arises under the laws of the United States, including 28 U.S.C. Section 1331; and 29 U.S.C. Section 1132 of the Employee Retirement Income Security Act ..., and the doctrines of ancillary and pendent jurisdiction.
Plaintiffs' Amended Complaint.

2. Flo subsequently pled guilty to the embezzlement and is presently incarcerated.

3. Mutschler joins in Lechner's motions.

dicial any evidence concerning the Greeley Street Medical Clinic.

Plaintiffs move in limine to prevent Lechner from inquiring into or presenting evidence concerning the doctors' personal lives. Plaintiffs also move for partial summary judgment on the issue of whether they may recover prejudgment interest or lost investment income as an element of compensatory damages. They further seek a ruling that the statute of limitations bars none of their damage claims.

## DISCUSSION

### 1. *Plaintiffs' and Defendants' Motions in Limine*

The court will reserve ruling on the parties' motions in limine until the question of the admissibility of the evidence arises at trial.[4]

### 2. *Defendants' Motion to Dismiss the State Law Claims of the Plans And AOA for Lack of Subject Matter Jurisdiction*

Defendants seek to dismiss the state law claims asserted by the Plans and AOA for lack of subject matter jurisdiction. Defendants contend that ERISA does not recognize claims brought by either employers (in their capacity as employers) or employee benefit plans. *See* 29 U.S.C. § 1132(a)(2) (permitting civil actions brought by "a participant, beneficiary, or fiduciary"); *see, e.g., Pressroom Unions–Printers League Income Sec. Fund v. Continental Assurance Co.,* 700 F.2d 889, 893 (2d Cir.1983) (pension fund has no standing to assert ERISA claims); *Grand Union Co. v. Food Employers Labor Relations Ass'n,* 808 F.2d 66, 71 (D.C.Cir.1987) (employer in that capacity may not bring suit under ERISA); *but see Fentron Indus. v. National Shopmen Pension Fund,* 674 F.2d 1300, 1305 (9th Cir.1982) (permitting an employer to bring an action for breach of fiduciary duty

in its capacity as employer). Defendants thus argue that AOA and the Plans are merely pendent parties to the present action because no subject matter jurisdiction exists over their ERISA claims. In *Finley v. United States,* the Supreme Court held that federal courts may not exercise pendent jurisdiction over the claims of pendent parties. 490 U.S. 545, 555–56, 109 S.Ct. 2003, 2010–11, 104 L.Ed.2d 593 (1989).[5] Thus, defendants argue that the court must dismiss the state law claims of the Plans and AOA. The court will examine those claims in turn.

### A. The Plans' State Law Claims

■ Defendants contend that ERISA does not permit the Plans to bring claims on their own behalf. Although a minority of courts have permitted a plan to bring a civil action, *see, e.g., Coleman Clinic v. Massachusetts Mut. Life Ins. Co.,* 698 F.Supp. 740, 744–45 (C.D.Ill.1988) (pension plan had standing to sue for improper termination insurance company that serviced plan), most courts find that no subject matter jurisdiction exists over such claims. *See, e.g., Pressroom,* 700 F.2d at 893; *Amalgamated Indus. Union Local 44–A Health & Welfare Fund v. Webb,* 562 F.Supp. 185, 188 (N.D.Ill.1983). In the absence of Eighth Circuit precedent, the court follows the majority rule and holds that the Plans may not assert ERISA claims on their own behalf. The Plans are thus merely pendent parties and the court grants defendants' motion to dismiss their state law claims.

### B. AOA's State Law Claims

■ Plaintiffs contend that they satisfy the *Finley* standard for pendent jurisdiction of AOA because AOA is a proper ERISA plaintiff in its capacity as both an administrator and a named fiduciary of the Plans. 29 U.S.C. § 1102(a)(2) (defining

---

**4.** At the hearing, Lechner's attorney agreed that if the memorandum from Lechner to Mutschler is received into evidence, the section referring to Dr. Cooley's personal life may be redacted.

**5.** Although *Finley* was superseded by statute, that statute applies only to civil actions commenced on or after its date of enactment, December 1, 1990. 29 U.S.C. § 1367. The statute does not apply to the present case because plaintiffs brought suit on July 7, 1986.

"named fiduciary").[6] Although AOA, as a plan fiduciary, would have been a proper plaintiff to bring an action under § 1132, *see, e.g., Great Lakes Steel v. Deggendorf,* 716 F.2d 1101, 1104–05 (6th Cir.1983) (employer as fiduciary may assert claim under § 1132(a)(3)), it did not do so. It is undisputed that AOA identified itself in the complaint merely as an "employer", not as an administrator or fiduciary. Plaintiffs' contention that AOA could have brought an ERISA claim as a fiduciary or administrator does not provide a sufficient basis for the exercise of pendent jurisdiction of its state law claims. In order to avoid its status as a pendent party, AOA must have originally invoked the subject matter jurisdiction of the court over its ERISA claims by alleging its status as a fiduciary. AOA not only failed to identify itself as a fiduciary in the complaint, it actively pled a count seeking to reform the plan agreements to eliminate any mention of its role as a plan administrator. AOA thus affirmatively denied its status as a fiduciary.

AOA's failure to allege its jurisdictional capacity is more than a technical oversight. Rule 8(a) of the Federal Rules of Civil Procedure requires that a complaint include an affirmative allegation of the basis for subject matter jurisdiction. Rule 9(a) expressly requires that the capacity of a party must be averred "to the extent required to show the jurisdiction of the court." AOA's failure to allege its fiduciary capacity is fatal to the court's jurisdiction of its state claims. *See, e.g., Nix v. Norman,* 879 F.2d 429, 431 (8th Cir.1989) (affirming dismissal of claim because party failed to allege proper jurisdictional capacity and Rule 9(a) requires such allegations).[7]

Plaintiffs also seek permission to amend the complaint if the court determines that they improperly alleged a party's jurisdictional capacity. The Second Circuit refused to allow such an amendment in an ERISA action. After upholding the dismissal of a pension fund's ERISA claims for lack of subject matter jurisdiction, the Second Circuit affirmed the district court's denial of the fund's request to amend its complaint to add plan participants as plaintiffs. *Pressroom,* 700 F.2d at 893–94. The court declined permission because the fund sought:

> not to remedy inadequate jurisdictional allegations, but rather to substitute a new action over which there is jurisdiction for one where it did not exist.

*Id.* Amending the complaint to allege AOA's role as a fiduciary would not only substitute a new action but would add a meritless action because the defendants are not ERISA fiduciaries. The court therefore refuses plaintiffs' request to amend the complaint concerning AOA. *See* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure,* § 1350, at 224–25 (1990) (court may dismiss without leave to replead when "the pleader cannot truthfully amend to allege jurisdiction"). The court also denies plaintiffs' request to amend the complaint concerning the Plans' status based on its determination that the Plans had no standing to assert any ERISA claims.

Intervenors Continental Insurance Company and Fidelity Casualty Company of New York ("intervenors") argue that federal common law pursuant to ERISA provides an independent basis upon which the court may exercise subject matter jurisdiction of plaintiffs' claims.[8] Various courts

---

**6.** Intervenors Continental Insurance Company and Fidelity Casualty Company of New York join in these arguments.

**7.** *Federal Practice and Procedure* also states that: Rule 9(a) provides that capacity to sue or be sued need only be averred "to the extent required to show the jurisdiction of the court." Thus, for example, if the right to bring the particular type of action that has been commenced is limited to persons suing in a certain capacity, it is necessary to include an allegation of capacity to give the court jurisdiction and to satisfy the requirements of Rules 8(a)(1) and 9(a).

5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure,* § 1206, at 96–97 (1990) (footnotes omitted).

**8.** The intervenors also assert that defendants' motions do not apply to them because neither Mutschler nor Lechner moved to dismiss any of their claims. The court notes, however, that the intervenors are plaintiffs solely in their role as subrogees, thus whatever rights they retain de-

have permitted such federal common law claims. *See, e.g., Whitworth Bros. Storage Co. v. Central States, Southeast & Southwest Areas Pension Fund,* 794 F.2d 221, 233–36 (6th Cir.1986) (permitting ERISA action by employer to recover pension fund payments made by mistake); *Award Serv., Inc. v. Northern California Retail Clerks Unions & Food Employers Joint Pension Trust Fund,* 763 F.2d 1066, 1068 (9th Cir.1985) (same). A separate basis for federal question jurisdiction under 28 U.S.C. § 1331 is found because ERISA preempts all claims which "relate to" employee benefit plans and courts must apply federal common law to those preempted claims. *Whitworth Bros.,* 794 F.2d at 233–36.

▮▮ The intervenors also rely on a decision of this court that permits a company in its capacity as employer and fiduciary to assert an ERISA action under federal common law. *Kahler Corp. v. John Hancock Mut. Life Ins. Co.,* No. 4-88-1109, 1989 WL 119176 (D.Minn. Oct. 2, 1989). Kahler Corporation brought claims against another ERISA fiduciary for engaging in transactions prohibited under ERISA and for breach of fiduciary duty under both ERISA and federal common law. *Id.* at *2. The district court held that:

> [i]n the absence of an Eighth Circuit decision, this Court adopts the majority view and holds that in this instance Kahler has stated a federal common law cause of action. Kahler's claim clearly "relates to" the terms of the Plan. At this stage of the matter, it is possible that defendants hold assets which may belong to the Plan. The ultimate determination of whether those assets must be returned will inevitably refer to the Plan's language and provisions. The Court, therefore, has jurisdiction pursuant to 28 U.S.C. § 1331.

*Id.* at *7. The court finds the present case distinguishable because plaintiffs seek to assert what are clearly state malpractice claims; defendants' alleged negligence does not relate to the terms or interpretation of the Plans but rather involves defen-

pends on the existence of jurisdiction over the

dants' actions after the Plans were put in place. ERISA does not preempt such claims. *See, e.g., Painters of Philadelphia Dist. Council No. 21 Welfare Fund v. Price Waterhouse,* 879 F.2d 1146, 1152–53 & n. 7 (3d Cir.1989) (ERISA does not preempt state malpractice claims against accounting firm that was not an ERISA fiduciary). Moreover, in light of the Eighth Circuit's affirmance that defendants' were not ERISA fiduciaries, *Anoka Orthopaedic,* 910 F.2d at 517, defendants' alleged negligence does not arise under ERISA. Thus, the court rejects the intervenor's argument that plaintiffs may assert an independent cause of action based on federal common law.

Based on the foregoing, the court determines that AOA is merely a pendent party and no subject matter jurisdiction exists over its state law claims. The court therefore grants defendants' motion to dismiss those claims.

The parties also seek partial summary judgment on various issues. Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Stated in the negative, summary judgment will not lie if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Ca-*

claims to which subrogation is made.

*trett,* 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552–2553, 91 L.Ed.2d 265 (1986); Fed. R.Civ.P. 56(c). A fact is material only when its resolution affects the outcome of the case. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. *Id.* at 250, 106 S.Ct. at 2511. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. at 2552–53. With this standard at hand, the court will consider the various motions.

## 3. *Defendants' Motions Concerning the Doctors' Claims*

Defendants seek to dismiss all of the doctors' claims, arguing that as "employees" and "shareholders" of AOA, the doctors have no standing to assert ERISA claims, and that as beneficiaries, the doctors have no standing to assert the state malpractice claims on behalf of the trust. The court will address the doctors' federal and state law claims in turn.

### A. The Doctors' ERISA Claims

▪ Defendants argue that the court has no subject matter jurisdiction over the doctors' ERISA claims because their status as employees and shareholders of AOA "conferred no federal subject matter jurisdiction over their ERISA claims." The court finds that this argument has a fatal flaw: it neglects the doctors' position as participants and beneficiaries of the Plans.

It is undisputed that the complaint alleged that the doctors were "participants and beneficiaries" of the three Plans. It is further undisputed that the doctors were beneficiaries at the time of the alleged negligence. As a result, ERISA clearly permits the doctors to assert a cause of action for breach of fiduciary duty on behalf of the Plans. 29 U.S.C. § 1109; *see, e.g., Sokol v. Bernstein,* 803 F.2d 532, 536 (9th Cir.1986) (beneficiary may assert ERISA claim on behalf of entire plan). The doctors thus are not pendent parties to the present case and *Finley* does not mandate dismissal of their pendent state law claims. Moreover, although the Eighth Circuit ultimately upheld the dismissal of the doctors' ERISA claims, the court finds that the doctors asserted plausible federal claims. Therefore, the exercise of pendent jurisdiction over the doctors' state law claims is appropriate. *See, e.g., Meason v. Bank of Miami,* 652 F.2d 542, 546–47 (5th Cir.1981); 13B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3564, at 70–71 (2d ed. 1984).

### B. The Doctors' State Law Claims[9]

Lechner moves for partial summary judgment on the issue of whether the doctors have standing to assert any legal malpractice claims. Lechner argues that AOA was his only client because he billed AOA and AOA paid for his legal services.[10] Lechner contends that his representation of AOA is not sufficient to establish an attorney-client relationship with its officers, directors or shareholders. *Humphrey on Behalf of State v. McLaren,* 402 N.W.2d 535, 540 (Minn.1987) ("[o]rdinarily, an attorney representing a corporation ... has no conflict of interest in representing the corporation against an officer or employee on a corporate matter"); *TJD Dissolution Corp. v. Savoie Supply,* 460 N.W.2d 59, 62 (Minn.Ct.App.1990) (corporation's attorney

---

**9.** The court considered materials outside the pleadings and thus applied the summary judgment standard to evaluate the doctors' state law claims. *See* Fed.R.Civ.P. 12(b) & (c); *Osborn v. United States,* 918 F.2d 724, 729 (8th Cir.1990) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977)).

**10.** Plaintiffs contend, however, that Lechner advised the trustees to have AOA pay his bills, thus calling into question the significance of Lechner's assertion. *See* discussion *infra.*

did not thereby represent shareholder of corporation). Lechner thus contends that the doctors had no standing to sue as either employees or shareholders of AOA.

Lechner also argues that the doctors have no standing to bring a legal malpractice action in their capacity as beneficiaries of the Plans because traditional principles of trust law do not permit a beneficiary to assert tort claims against a trust's lawyer and accountant. Lechner thus concludes that the doctors failed to establish either the attorney-client relationship or privity of contract necessary to assert a claim for legal malpractice. *Schuler v. Meschke*, 435 N.W.2d 156, 162 (Minn.Ct.App.1989) (holding that members of a farm cooperative had no standing to bring a legal malpractice action against an attorney who provided services for the cooperative because the cooperative was the client, not its members).

Based on the foregoing, Lechner argues that AOA was the only entity with standing to sue for malpractice. Because AOA's claims are dismissed for lack of subject matter jurisdiction, Lechner seeks to dismiss all of the doctors' state law claims based on his contention that no plaintiff remains to assert them.

Under Minnesota law, a plaintiff must establish three elements to prove legal malpractice:

(1) that an attorney-client relationship existed;[11]

(2) that the attorney acted negligently or in breach of contract; and

(3) that the negligence or breach proximately caused damage to the plaintiff.[12]

*Togstad*, 291 N.W.2d at 692.

Plaintiffs claim that an attorney-client relationship existed between the doctors and Lechner because the doctors, in their capacity as trustees, hired Lechner to audit the Plans. Plaintiffs also claim that Lechner advised them to pay his bills from AOA's account because those expenses would produce a tax deduction for AOA but not the Plans. Thus plaintiffs argue that Lechner's claim that AOA paid his bills is of little significance when evaluating whether or not an attorney-client relationship existed. Based on the foregoing, the court finds that there is a material fact dispute about whether an attorney-client relationship existed between the doctors and Lechner.

Plaintiffs also contend that the doctors have standing to sue Lechner even if no attorney-client relationship existed because Lechner was specifically hired to provide services for them as beneficiaries of the Plans.[13] Minnesota permits nonclients to assert claims for legal malpractice if the nonclients are the intended beneficiaries "of the lawyer's services." *Marker v. Greenberg*, 313 N.W.2d 4, 5 (Minn.1981). In *Marker*, the Minnesota Supreme Court applied a balancing test to determine whether a nonclient had standing to sue for legal malpractice, examining the following factors:

1. The extent to which the transaction was intended to affect the plaintiff;

2. The foreseeability of harm to the plaintiffs;

---

**11.** Minnesota allows plaintiffs to prove the existence of an attorney-client relationship under a theory of contract or tort. *Savoie Supply*, 460 N.W.2d at 62. Plaintiffs may prove either an express or implied contract of representation. *Id.* Under a tort theory:

> [a]n attorney-client relationship is created whenever an individual seeks and receives legal advice from an attorney in circumstances in which a reasonable person would rely on such advice.

*Togstad v. Vesely, Otto, Miller & Keefe*, 291 N.W.2d 686, 693 n. 4 (Minn.1980) (per curiam) (quoting Comment, *Attorney Malpractice: Use of Contract Analysis to Determine the Existence of an Attorney–Client Relationship*, 63 Minn.L.Rev. 751, 759 (1979)).

**12.** Lechner also contends that the connection between his conduct and any injury to the Plan beneficiaries is too remote to establish liability. The court determines, however, that plaintiffs present sufficient facts on this issue to raise a jury question.

**13.** Plaintiffs also contend that as the Plans' administrator, AOA has standing to sue defendants for malpractice. Even if AOA has such standing, the court could not exercise pendent jurisdiction over its malpractice claims. *See* discussion *supra*.

3. The degree of certainty that the plaintiffs suffered injury;

4. The closeness of the connection between the defendants' conduct and the injury; and

5. The policy of preventing future harm.

*Id.* at 5–6 (finding no standing and citing *Lucas v. Hamm*, 56 Cal.2d 583, 15 Cal. Rptr. 821, 823–24, 364 P.2d 685, 687–88 (1961)). Although the *Marker* court applied the *Lucas* test in the estate planning context, other courts have applied a similar balancing test to allow legal malpractice claims by third parties. *See, e.g., Vereins–Und Westbank, AG v. Carter*, 691 F.Supp. 704, 709 (S.D.N.Y.1988) (permitting claim to proceed for negligent misrepresentation in opinion letter); *Donald v. Garry*, 19 Cal.App.3d 769, 97 Cal.Rptr. 191, 192 (1971) (permitting a claim where an attorney voluntarily undertook a duty to a third party); *Morales v. Field, Degoff, Huppert & MacGowan*, 99 Cal.App.3d 307, 160 Cal. Rptr. 239, 243–44 (1979) (holding attorney for a trustee and executor liable to beneficiaries of a trust). Following *Marker*, the court determines that a Minnesota court would apply the *Lucas* test in the present case to determine whether the doctors may properly assert legal malpractice claims as nonclients. Applying the *Lucas* factors, the court finds that material fact disputes exist concerning the extent to which defendants' services were intended to benefit the doctors, the foreseeability of the alleged harm, the certainty of the doctors' alleged injury, and the causal connection between any injury and defendants' alleged negligence. The court thus rejects Lechner's claim that the doctors, as nonclients, have no standing to assert the legal malpractice claims.

Based on the foregoing, the court denies Lechner's motion to dismiss the doctors' legal malpractice claims to the extent that his motion is based on the contentions that no attorney-client relationship existed and that the nonclient exception does not apply.

■ Relying on principles of traditional trust law, defendants contend that as beneficiaries, the doctors have no standing to assert tort claims on behalf of the trust. *See Restatement (Second) of Trusts* § 281 & cmt. b (1959).[14] It is undisputed that the doctors did not allege their status as either fiduciaries or trustees of the Plans in the complaint. Plaintiffs argue, however, that ERISA, rather than traditional trust law, defines the doctors' relationship to the Plans and that ERISA permits the doctors as beneficiaries to bring the present lawsuit on behalf of all beneficiaries and participants of the Plans for the entire amount of loss to the Plans. Plaintiffs rely on Section 1132(a)(2) of ERISA, which permits a beneficiary to bring a civil action "for appropriate relief under section 1109." 29 U.S.C. § 1132(a)(2). Section 1109 provides that:

(a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other eq-

---

**14.** Section 281 of the Restatement provides that:

(1) Where the trustee could maintain an action at law or suit in equity or other proceeding against a third person if the trustee held the trust property free of trust, the beneficiary cannot maintain an action at law against the third person, except as stated in Subsection (2).

(2) If the beneficiary is in possession of the subject matter of the trust, he can maintain such actions against the third person as a person in possession is entitled to maintain. Comment b to Section 281 states that:

If a third person commits a tort with respect to the trust property, the beneficiary, if he is not in possession, cannot maintain an action at law against him. Thus, if land is held in trust and a third person wrongfully enters upon or damages the land, or if chattels are held in trust and a third person wrongfully takes away or damages them, the beneficiary, if he is not in possession of the land or chattels, cannot maintain an action at law against him.

*Restatement (Second) of Trusts* § 281 & cmt. b (1959).

uitable or remedial relief as the court may deem appropriate....

(b) No fiduciary shall be liable with respect to a breach of fiduciary duty under this subchapter if such breach was committed before he became a fiduciary or after he ceased to be a fiduciary.

29 U.S.C. § 1109. ERISA thus permits a beneficiary to assert a claim for breach of fiduciary duty on behalf of the whole plan, but only against a person who is a "fiduciary with respect to [an ERISA] plan." Plaintiffs reliance on these sections of ERISA is thus misplaced in light of this court's determination that defendants are not fiduciaries with respect to the Plans. *See also Anoka Orthopaedic,* 910 F.2d at 517 (affirming this determination). ERISA also does not purport to define a beneficiary's right to bring state malpractice claims nor does it preempt such claims. *See, e.g., Painters of Philadelphia,* 879 F.2d at 1152–53 & n. 7 (ERISA does not preempt state malpractice claims against accounting firm that was not an ERISA fiduciary).[15] The court therefore determines that state trust law defines the doctors' right to assert state malpractice claims on behalf of the trust. Applying state trust law principles, the court finds that the doctors as beneficiaries have no right to assert the legal malpractice claims on behalf of the Plans. *See Restatement (Second) of Trusts* § 281 cmt. b (1959).[16]

At the hearing, plaintiffs requested permission to amend their complaint to rectify any errors in pleading their jurisdictional capacity. The court determines that an amendment to allege the doctors' capacity to assert the state malpractice claims as trustees may be appropriate because it is likely that jurisdiction exists over those claims. *See, e.g., Illinois Terminal R. Co. v. Friedman,* 208 F.2d 675, 677 (8th Cir. 1953) (per curiam) (remanding case to permit party to amend complaint to allege jurisdictional facts because it was "reasonable to suppose" that jurisdiction existed). The court further notes that despite their claim that the doctors are plaintiffs solely as beneficiaries, defendants do not dispute the doctors' role as trustees and, in fact, assert a comparative negligence defense based on the doctors' actions in that capacity.[17] Throughout this litigation, the parties have referred to the doctors as trustees. The Plans specifically name the doctors as trustees and unlike AOA, the doctors have not disclaimed this role. Moreover, if permitted to amend the complaint to assert their capacity as trustees, the doctors, unlike AOA or the Plans, would not be adding meritless claims. Based on the foregoing, the court stays decision on defendants' motion to dismiss the doctors' state law claims for failure to allege their status as trustees for a period of five days from the date of this order. *See* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure,* § 1350, at 223 (1990) (when the evidence shows that "the nonmoving party might be able to amend [the complaint] to allege jurisdiction, the court may deny the motion [to dismiss] and direct the pleader to amend") (footnotes omitted). The doctors must move the court for permission to amend their state law claims to allege their

---

**15.** The court also determines that the doctors may not rely on federal common law to define their standing to bring their state malpractice claims. *See* discussion *supra* (rejecting intervenors' arguments regarding ERISA and federal common law).

**16.** Minnesota courts permit beneficiaries to assert such tort claims in limited circumstances:

> [i]f a third person commits a tort against trust property, the trustee has a duty to take reasonable steps to compel the tortfeasor to redress the injury.... When the trustee fails to bring suit against a third party tortfeasor, the beneficiaries may properly bring an action against the trustees and third parties as codefendants.

*Uselman v. Uselman,* 464 N.W.2d 130, 137–38 (Minn.1990) (citations omitted). Plaintiffs may not rely on this exception, however, because the doctors as beneficiaries did not bring an action against "the trustees and third parties as codefendants."

**17.** Lechner's pretrial memorandum, in which Mutschler joins, specifically argues that:

> as ERISA trustees, the doctors may be found personally liable for their own negligence which caused damages to the Plans. If the negligence of Lechner and Mutschler is found to have caused damages to the beneficiaries, then equity requires contribution from the doctors for breach of their fiduciary duties as ERISA trustees.

capacity as trustees within that five-day period. If the doctors do not move for permission to amend their complaint within that five days, the court will grant defendants' motion to dismiss the doctors' state law claims without prejudice.

### 4. *Plaintiffs' and Defendants' Cross–Motions for Partial Summary Judgment Concerning the Statute of Limitations*

■ Minnesota has a six-year statute of limitations for legal and accounting malpractice actions. Minn.Stat. § 541.05, subd. 1(5) (1986). The limitation period begins to run on the date that the cause of action accrues; malpractice actions generally accrue when the damage caused by the negligence occurs. *Thiele v. Stich,* 425 N.W.2d 580, 584 (Minn.1988). Defendants contend that plaintiffs' alleged damage occurred every time that Flo wrongfully converted money for his own use. Because plaintiffs commenced this action on July 7, 1986, defendants argue that the statute of limitations bars recovery of any amounts that were embezzled prior to July 7, 1980. Plaintiffs claim that Flo misappropriated funds four times in 1979 for a total amount of $100,000 and defendants contend that those damages are untimely.

Plaintiffs respond that the statute of limitations does not bar any claims for two reasons. Plaintiffs first contend that the statute of limitations did not begin to run until plaintiffs discovered defendants' malpractice and that the continuous representation doctrine applies to toll the statute of limitations. Plaintiffs also argue Lechner's fraudulent concealment of his malpractice tolls the statute of limitations.

Minnesota courts have recognized the continuous treatment doctrine for many years. *See, e.g., Couillard v. Charles T. Miller Hosp.,* 253 Minn. 418, 92 N.W.2d 96, 103 (1958) (holding that statute of limitations for medical malpractice action is suspended as long as the physician continues to treat the patient for a particular condition). Plaintiffs, relying on authority from other jurisdictions, argue that a parallel continuous representation doctrine should be applied to the present facts.

Although no Minnesota court has explicitly adopted the continuous representation doctrine, the Minnesota Supreme Court and Court of Appeals have reached essentially the same result on facts similar to those in the present case by determining that the statute of limitations begins to run as of the date when the last professional service was performed. In an accounting malpractice action, the Minnesota Supreme Court held that the statute of limitations began to run as of the date of defendants' last negligent act. *Bonhiver v. Graff,* 311 Minn. 111, 248 N.W.2d 291, 296 (1976). In *Bonhiver,* plaintiff alleged that the defendant accountant and his accounting firm negligently failed to discover that company officers were misappropriating funds. *Id.,* 248 N.W.2d at 295–96. The court determined that any damage was ongoing because company officers were taking money throughout the period of time in which defendants provided accounting services. *Id.,* 248 N.W.2d at 296. The court thus held that the statute of limitations began to run at the time of defendants' last possible negligent act, which occurred as of the date that the defendant accountant left the accounting firm and ceased doing accounting work for the company. *Id.* In *May v. First National Bank,* plaintiffs alleged that their attorneys had been negligent based on their failure to apprise plaintiffs of a potential tax liability resulting from cash lease payments. 427 N.W.2d 285, 288–89 (Minn.Ct.App.1988). The trial court determined that any actual damage occurred between the date on which the first lease payment was made in 1979, and February 10, 1981, the last date on which counsel provided any legal services to plaintiffs. *Id.* at 289. The trial court thus determined that the statute of limitations began to run on February 10, 1981. *Id.* The Court of Appeals affirmed, holding that the statute of limitations began to run as of the date of the last legal service. *Id.*

■ Based on the foregoing, the court determines that the analysis of *May* and *Bonhiver* should be followed to deter-

mine when the statute of limitations began to run in the present case. Applying that analysis, the court finds that plaintiffs' damages would be ongoing because Flo embezzled funds throughout the period of time in which defendants allegedly had an ongoing duty to audit the Plans. The court further finds that it is unable to determine when defendants' last act of negligence occurred on the basis of the record before it.[18] Lechner admits that he performed legal services for the plaintiffs until January 1986 and plaintiffs argue that the statute of limitations should be tolled at least until that time based on Lechner's fraudulent concealment of malpractice. Plaintiffs proffer letters written by Lechner in which he states that his firm was performing the promised audits. Plaintiffs contend that those letters demonstrate either intentional misrepresentation, or at a minimum, that Lechner made those claims with reckless disregard for their truth or falsity. *Collins v. Johnson*, 374 N.W.2d 536, 541 (Minn.Ct.App.1985) (fraudulent concealment may be demonstrated either by showing the defendant knew that his representations were false or that he made such representations "in reckless disregard of their truth or falsity"). Based on the foregoing, the court finds that material fact disputes exist concerning whether Lechner fraudulently concealed malpractice and when, under *May* and *Bonhiver*, the statute of limitations began to run, and thus denies both motions for partial summary judgment on this issue.

5. *Plaintiffs' and Defendants' Cross-Motions for Partial Summary Judgment on the Damages Issues*

Plaintiffs and defendants both move for partial summary judgment on the issue of what constitutes appropriate damages.

Defendants argue that plaintiffs may not recover either prejudgment interest or lost investment income because Minnesota law prohibits such recovery on unliquidated damages.[19] Plaintiffs contend, however, that lost investment income is compensable because the amount of loss is readily ascertainable and the loss was directly caused by defendants' negligent failure to audit the Plans.

Minnesota law generally does not permit plaintiffs to recover interest on unliquidated damages. Minn.Stat. § 549.-09[20]; *see, e.g., Bonhiver v. Graff,* 311 Minn. 111, 248 N.W.2d 291, 305 (1976).

> However, Minnesota has adopted the position that where a claim is unliquidated but ascertainable by computation or reference to generally recognized standards such as market value and the claim does not depend upon any contingency, interest shall be allowed the same as for a liquidated claim.

*Id.,* 248 N.W.2d at 304–05 (quoting *Moosbrugger v. McGraw–Edison Co.,* 284 Minn. 143, 170 N.W.2d 72, 82 (1969)). Minnesota courts thus permit plaintiffs to assert claims based on lost profits if plaintiffs can prove those amounts with reasonable certainty:

> The general rule in Minnesota is that damages in the form of lost profits "may be recovered where they are shown to be the natural and probable consequences of the act or omission complained of and their amount is shown with a reasonable degree of certainty and exactness. This means that the nature of the business or venture upon which the anticipated profits are claimed must be such as to support an inference of definite profits grounded upon a reasonably sure basis

**18.** The court notes that Mutschler merely joined in Lechner's motions and presented no facts to indicate when he ceased performing services for the Plans.

**19.** Defendants further seek to limit damages by arguing that the doctors are plaintiffs solely in their role as beneficiaries, thus "any damages they might claim are limited to their own losses in the Plans." The court declines to limit plaintiffs's damages in this manner in light of its

decision to permit the doctors to bring a motion to amend their state law claims to allege their capacity as trustees.

**20.** Section 549.09 provides that the prevailing party in a lawsuit may recover prejudgment interest. The interest is calculated on the amount of the prevailing party's damages and is awarded to compensate for the loss of the use of money during the pendency of litigation.

of facts.... This rule does not call for absolute certainty."

*Olson v. Aretz*, 346 N.W.2d 178, 182 (Minn. Ct.App.1984) (citing *Cardinal Consulting Co. v. Circo Resorts*, 297 N.W.2d 260, 266–67 (Minn.1980)). Minnesota courts further hold that in a professional malpractice action, the proper measure of damages is that amount of damages proximately caused by the defendant's negligence. *See, e.g., Whitney v. Buttrick*, 376 N.W.2d 274, 280–81 (Minn.Ct.App.1985) (legal malpractice action). Plaintiffs contend that they lost between $700,000 and $900,000 of investment income on funds that would have been invested in the Plans but for defendants' negligent failure to audit the Plans. They also claim that lost investment income is readily ascertainable and will be demonstrated by expert testimony. The court finds that damages for lost investment income are akin to those permitted for lost profits. It further finds that such damages are readily ascertainable by computation and reference to generally recognized standards and that a jury could find that the losses were proximately caused by a negligent failure to audit the Plans. Accordingly, the court concludes that lost investment income, if proven, is a proper element of plaintiffs' compensatory damages,[21] and grants plaintiffs' motion for partial summary judgment on this issue and denies defendants' motion.

### 6. Comparative Negligence

■■■ Defendants urge the court to apply the comparative fault principles under Minn.Stat. § 604.01 and the law of contribution to allocate fault between defendants, AOA, and the doctors in their positions as beneficiaries and trustees of the Plans. Plaintiffs respond that defendants held themselves out as experts in the area of ERISA employee benefit plans and that plaintiffs relied on that expertise. They further contend that defendants promised to perform audits and that they negligently failed to do so. Plaintiffs claim that these facts justify a limited jury instruction on comparative fault because defendants' scope of employment clearly encompassed a duty to discover Flo's embezzlements. *See Halla Nursery, Inc. v. Baumann–Furrie & Co.*, 454 N.W.2d 905, 909 (Minn. 1990) (en banc) (a limiting instruction may be necessary in such cases). The court determines that there is a material fact dispute concerning whether the scope of defendants' employment clearly encompassed the discovery of defalcation. Accordingly, the court denies defendants' motion for partial summary judgment concerning the appropriate fault standard.

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Decision on the parties' motions in limine is stayed;

2. Defendants' and plaintiffs' motions for partial summary judgment on the statute of limitations issue are denied;

3. Defendants' motion to dismiss for lack of subject matter jurisdiction is granted and the state law claims of AOA and the Plans are dismissed without prejudice;

4. Lechner's motion to dismiss the doctors' legal malpractice claims is denied to the extent that his motion is based on his claims that no attorney-client relationship existed and that the doctors had no standing to assert legal malpractice claims as nonclients; defendants' motion to dismiss the doctors' state law claims for failure to state a claim under state trust law on the basis of their status is stayed for five days from the date of this order;[22]

---

21. Plaintiffs argued in their briefs that they were entitled to both prejudgment interest and lost investment income. At the hearing, however, they conceded that they were entitled to either one or the other but not to both amounts. Based on its ruling that plaintiffs may properly seek to recover lost investment income, the court does not address nor rule on the parties' arguments concerning the availability of prejudgment interest.

22. The court notes that if the doctors move to amend their complaint and the court grants that motion, the parties will be required to submit an original and two copies of all trial documents by 9:00 a.m. on October 4, 1991 and the trial will begin on October 7, 1991 at 9:00 a.m. in Courtroom 4, 110 South Fourth Street, Minneapolis, Minnesota.

5. Plaintiffs' motion for partial summary judgment on the damages issue is granted and defendants' motion is denied; and

6. Defendants' motion for partial summary judgment on the comparative fault standard is denied.