Howard R. FLETCHER and Georgene Fletcher, Plaintiffs,

v.

Randy J. ZELLMER, and the Law Firm of Johnson, Anderson & Zellmer, Defendants.

No. 3–94 CIV 1542.

United States District Court,
D. Minnesota,
Third Division.

Dec. 6, 1995.

Paul A. Sortland, Minneapolis, Minnesota appeared on behalf of Howard R. Fletcher and Georgene Fletcher.

Bassford, Lockhart, Truesdell, & Briggs, P.A. by Michael A. Klutho, Minneapolis, Minnesota appeared on behalf of Randy J. Zellmer and the Law Firm of Johnson, Anderson & Zellmer.

## ORDER

ALSOP, Senior District Judge.

The above-entitled matter came on for hearing before the Court on September 29, 1995 upon the Motion of Defendants for Summary Judgment (docket no. 8). Plaintiffs bring a claim for legal malpractice arising out of legal advise Defendant Zellmer provided to Plaintiffs in certain matters related to Plaintiffs' operation of a funeral home business between 1987 and 1990. Plaintiffs purchased the funeral home business ("Woodland Hills") in Mankato, Minnesota in March 1987. The business was sold by a court-appointed receiver in May 1990.

Included in the Woodland Hills purchase were a cemetery, a funeral home, and two trust accounts. One fund, the perpetual care fund, was for the care and maintenance of the cemetery. The second fund, the pre-need trust fund, contained money from clients who prepaid for funeral services. The trust accounts are regulated by Minnesota Statutes § 149.11 (1989) and § 306.79 (1985). Under MSA § 306.79 which governs the perpetual care fund Plaintiffs were required to hold the principal inviolable and certain withdrawals of funds for specific improvements of the cemetery under specified conditions were permitted. Under MSA § 149.11(a) which governs pre-need accounts the total amount of money paid in by clients must be held in trust for the purpose for which it was paid until the death of the person concerned or until a refund is requested.

In Spring 1988 the consumer division of the Minnesota Attorney General's (MNAG) Office began investigating Plaintiff Fletcher and Woodland Hill's use of funds from the trust accounts. After meetings with Fletcher and some Woodland Hills employees and after examining certain financial statements

for the pre-need trust account, the MNAG on August 2, 1988 initiated a civil consumer protection action against Fletcher and Woodland Hills. On August 4, 1988 the MNAG obtained a search warrant to enter the offices of Woodland Hills and remove financial records, bank statements, and other property it believed was used in or evidence of criminal activity. In October 1988 the court appointed a temporary receiver to take over the running of Woodland Hills, and around the same time Fletcher left Minnesota to find new employment. In August 1991 the MNAG brought criminal charges against Fletcher and in March 1993 Fletcher was convicted of four counts of theft. *See State v. Fletcher*, 1994 WL 373312 (Minn.App. 1994).

Plaintiffs allege that Defendants negligently advised Fletcher about the use of money from the trust funds and that Defendants' negligence caused Plaintiff Fletcher to be convicted based upon his use of funds from the accounts. Plaintiffs also claim Defendants' negligence caused Woodland Hills to be sold by a receiver for much less than its actual value.

### DISCUSSION

■■■ Under Fed.R.Civ.P. 56(c) the Court may grant a motion for summary judgment when the pleadings, affidavits and record show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Summary judgment is proper if examination of the evidence in the light most favorable to the non-moving party reveals no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Summary judgment is also proper if a party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–324, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

### I. Plaintiffs' Claim for Legal Malpractice

■■■ Plaintiffs claim Defendant Zellmer has committed several negligent acts and is liable for legal malpractice. To survive a motion for summary judgment, Plaintiffs must produce sufficient evidence to show a genuine issue of material fact as to each element of their claim. There are three elements of a prima facie case for negligent legal advice not involving the loss of an underlying claim: (1) the existence of an attorney-client relationship giving rise to a duty, (2) the negligent giving of advice or exercise of judgment on which the client detrimentally relies, (3) the negligent advice or judgment must be the proximate cause of damage to the client. *Fiedler v. Adams*, 466 N.W.2d 39 (Minn.App.1991) *pet. for rev. denied* (Minn. April 29, 1991); *Gustafson v. Chestnut*, 515 N.W.2d 114 (Minn.App.1994). With respect to the first element, it is not disputed that there existed an attorney-client relationship between Fletcher and Zellmer at the time of the alleged negligent acts. With respect to the second and third elements Plaintiffs still must make a sufficient showing to survive the Defendants' motion for summary judgment.

Plaintiffs' complaint refers to seven separate negligent acts alleging that Zellmer: (1) failed to properly advise Fletcher about the use of funds in the trust accounts; (2) in his representation of Fletcher in the civil suit brought by the Minnesota Attorney General's office Zellmer negligently failed to advise Fletcher that any statements made by him could be used against him in subsequent criminal proceedings; (3) failed to advise Fletcher that instead of providing answers he could plead the Fifth Amendment; (4) failed to advise Fletcher of the possibility of a criminal prosecution based upon allegations made by the MNAG's office; (5) failed to advise Fletcher that by leaving the State of Minnesota the statute of limitations on any criminal proceedings would be tolled; (6) was negligent in allowing the funeral home to be sold by a receiver; (7) failed to advise Fletcher to do a proper account of the pre-need trust accounts or other accounts.

■■■ The Court finds that the third and sixth allegations may be dismissed because Plaintiffs have failed to make a sufficient showing of negligence, the second element of a prima facie case. Plaintiffs' third allegation is that Zellmer negligently failed to advise Fletcher to plead the Fifth Amendment

in response to questions and requests for information and admissions from the MNAG's Office during their investigation of the consumer protection action. In order to establish that Zellmer was negligent in failing to advise Fletcher to plead the Fifth, Plaintiffs must provide expert testimony showing that this was in breach of the standard of care Defendant owed Plaintiffs. *Fiedler*, 466 N.W.2d at 43. Plaintiffs fail to provide any expert testimony showing that Zellmer breached the standard of care by not advising his client to plead the Fifth. Nor have Plaintiffs provided evidence disputing the expert testimony submitted by Defendant that shows Zellmer was not negligent in this regard. Defendant's expert concluded that Zellmer employed an appropriate strategy in dealing with the MNAG's civil action. He observed that while Fletcher could have plead the Fifth as an individual, the corporation could not have. He also noted that if Fletcher had plead the Fifth and refused to answer the MNAG's request for admissions the fact-finder in the civil case would have been entitled to draw negative inferences, and this supported a strategy of advising cooperation. Even if the Court were to assume that Zellmer's strategy and advice were erroneous, this does not establish that Defendant was negligent. A mere error in judgment does not create liability if "within the bounds of an honest exercise of professional judgment." *Wartnick v. Moss & Barnett*, 476 N.W.2d 166 (Minn.App.1991) (quoting *Cook v. Connolly*, 366 N.W.2d 287, 292 (Minn.1985)). Defendant's expert indicates that the decision to plead or not to plead the Fifth was an exercise of professional judgment. Plaintiff offers no expert testimony or other evidence to contradict this and fails to make a showing sufficient to survive a motion for summary judgment.

■ Plaintiffs also fail to provide expert testimony supporting their sixth allegation that Defendant was negligent in permitting Plaintiffs' business to be sold by a receiver for less than its value. Plaintiffs' expert says nothing about the receiver's sale of the business nor does he state that Defendant acted negligently with regard to the sale. In his memorandum Plaintiff concedes as much stating that the sale shows Plaintiffs' damages but is not a separate cause of action. The Court finds that Plaintiffs have not made a sufficient showing to establish a claim for negligence based upon the receiver's sale.

■ With respect to the second, fourth and fifth allegations even if the Court assumes that the evidence of experts is sufficient to create a triable issue with respect to negligence, Plaintiffs must still satisfy the third element and show that the negligence was a proximate cause of Plaintiffs' damages. An act is the proximate cause of the damage if the conduct was a substantial factor in bringing about the injury. *Fiedler*, 466 N.W.2d at 43. The test is the same as the traditional rule of "but for" causation. *Gustafson v. Chestnut*, 515 N.W.2d 114 (Minn. App.1994). While causation is usually a fact issue for the jury, it may be decided as a matter of law when reasonable minds can arrive at only one conclusion. *Lennon v. Pieper*, 411 N.W.2d 225, 228 (Minn.App. 1987).

■ Looking at the second and fourth allegations, the Court finds that reasonable minds could only conclude that the alleged negligent advice is not the but for cause of Plaintiffs' injury. The second allegation is that Defendant failed to advise Fletcher that his statements could be used against him in criminal proceedings. The fourth allegation is that Defendant failed to advise Fletcher that criminal proceedings could follow. The evidence does not show that any negligence in failing to advise Plaintiff about the possibility of criminal charges or the use of statements made in connection with the civil suit in criminal proceedings is what caused Fletcher to be charged and convicted of theft. On August 4, 1988 Fletcher was served with a search warrant giving officials the power to seize certain materials from Fletcher's funeral home business including documents related to Fletcher's finances and trust accounts. Zellmer was not retained to represent Fletcher in the consumer protection suit until after the warrant was executed. Fletcher cannot claim that he was unaware of the possibility of criminal charges because of his attorney's negligence when even before he retained his attorney he had

been served with a search warrant and officials had entered his home and seized business property and records. Reasonable minds could only conclude that at the time the warrant was executed Fletcher was aware of the possibility of criminal proceedings against him and as this occurred before Zellmer was retained he cannot show that Zellmer's alleged failure to advise him caused him to cooperate with the MNAG to his detriment.

Nor can any advice to cooperate with the MNAG's office be seen as the but for cause of his conviction. The record shows that in executing the search warrant the MNAG's office seized financial data and other evidence documenting Fletcher's use of trust money. It also shows that even before the search warrant was executed employees of Woodland Hills had come forward with documents showing mishandling of the preneed account. Documents and the testimony of employees were among the evidence considered by the jury that convicted Fletcher. There is nothing showing that any evidence that may have been obtained from cooperation between Fletcher and the MNAG was used at trial. Even if the cooperation resulted in such evidence reasonable minds could not find that such evidence and not the documents and testimony already possessed by the MNAG was the but for cause of Fletcher's conviction.

Also Plaintiff fails to show that the purported negligence in the fifth allegation is the but for cause of Plaintiffs' injury. The fifth allegation is that Defendant negligently failed to advise Plaintiff that the statute of limitations on the criminal charges would be tolled by Fletcher's leaving the state. The parties do not dispute the fact that Zellmer spoke with Fletcher about his intention to leave Minnesota during the MNAG's investigation in the civil suit. Nor do they dispute that Zellmer did not mention that a three year statute of limitations applied to any potential criminal charges or that leaving the state tolled the statute of limitations. The record shows that all charges were based upon Fletcher's use of funds from the preneed and/or perpetual care accounts from August 1987 through July 25, 1988 and that

he was not charged until August 1991. However, the fact that the MNAG brought criminal charges more than three years after the underlying transactions took place does not in itself prove that the alleged negligent advice is the but for cause of Fletcher's indictment. To establish that the negligent act is the but for cause of his injury Plaintiff must provide evidence that he would not have been charged had Defendant advised him about the tolling of the statute. *See Raske v. Gavin,* 438 N.W.2d 704, 706 (Minn.App.1989); *Gustafson v. Chestnut,* 515 N.W.2d 114, 117 (Minn.App.1994). Plaintiffs provide no such evidence, and the facts do not support such a finding. Fletcher left the state in late September or early October 1988. Had Zellmer advised Fletcher about the tolling and had he stayed, the statute of limitations on the earliest transactions would not have run until March 1990 and on the other transactions as late as July 1991. Considering that the MNAG as early as August 4, 1988 had sufficient evidence to establish probable cause and obtain a search warrant and after executing the search warrant obtained additional evidence against Fletcher, reasonable minds could not find that but for the tolling of the statute the MNAG would not have charged Plaintiff within the three years statutory period.

## II. Statute of Limitations

Even if the Court assumed that Plaintiffs have made a sufficient showing with respect to the two remaining claims, the first and seventh allegations, the claims must be commenced before the statute of limitations runs or they are barred. Under Minnesota law the statute of limitations applicable to a claim for legal malpractice is six years. MSA § 541.05 subd. 1(5) (1988). Minnesota courts recognize that a right of action accrues and the statue begins to run when damage occurs. *Grimm v. O'Connor,* 392 N.W.2d 40, 43 (Minn.Ct.App.1986); *May v. First Nat'l Bank* 427 N.W.2d 285 (Minn. Ct.App.1988); *Sabes & Richman, Inc. v. Muenzer,* 431 N.W.2d 916, 917 (Minn.Ct.App. 1988). *Sabes,* 431 N.W.2d at 917. The ultimate damage need not be known or predictable. *Id.* at 918 (citing *Dalton v. Dow Chemi-*

cal Co., 280 Minn. 147, 158 N.W.2d 580, 585 (1968)). Nor must the Plaintiff have discovered that she has a cause of action. Id. at 919.

Plaintiffs argue that under Minnesota law the continuous representation doctrine is controlling and according to this doctrine the statute of limitations does not begin to run until Defendants have rendered the last legal services to Plaintiffs. The record shows that Zellmer's last bill to Fletcher was in May 1990. Plaintiffs commenced this action November 5, 1994, and they argue that it is well within the statute. In support of this argument Plaintiffs cite Anoka Orthopaedic Assoc. P.A. v. Mutschler, 773 F.Supp. 158 (D.Minn.1991). Anoka involved a malpractice claim brought against a law firm for failing to properly oversee employee benefit plans and allowing a plan administrator to embezzle funds of almost $500,000 from the plans over several years. Defendants in Anoka argued that damage occurred every time the plan administrator converted funds for his own use and since that occurred over a seven year period the amounts embezzled more than six years before the suit was commenced were barred. The court disagreed but not because it found the continuous representation doctrine was controlling. It observed that the continuous representation doctrine had not yet been adopted by Minnesota Courts. Nonetheless it found that two cases May v. First National Bank, 427 N.W.2d 285 (Minn.App.1988) rev. denied (Oct. 26, 1988) and Bonhiver v. Graff, 311 Minn. 111, 248 N.W.2d 291 (1976) provided a basis for applying the doctrine in the Anoka case. Anoka, 773 F.Supp. at 169. Accordingly it found the statute of limitations on Anoka's claims did not begin to run until the period of representation ended. Id. at 169–170. This result, however, does not indicate that the continuous representation doctrine is controlling in all legal malpractice cases. The court said only that those cases provided a basis for determining when the statute of limitations began to run in the present case. Id. at 170.

Nor does this Court find that either of the cases cited in Anoka provide a basis for applying the continuous representation doctrine in the present case. Bonhiver involved a claim for malpractice against an accounting firm which had failed to discover that company officials were misappropriating funds. While it may have been persuasive in Anoka, the alleged negligence in the present case is not based upon failure to oversee financial officers. Nor does May establish that the continuous representation doctrine is controlling in legal malpractice cases. May concerned a legal malpractice claim brought by heirs to farm property who claimed that attorneys failed to properly qualify the farm during probate and caused them to be liable to the IRS for a large tax deficiency. The heirs brought suit eight months after the IRS took action to recapture the unpaid taxes and more than six years after attorneys had completed probate. The court held that the claims were barred by the statute of limitations. It found that the trial court properly decided that "actual damage, if any, had to occur between May 1, 1979 ... and the last date of any legal services." Id. at 288. Since the last day of legal services was more than six years before commencement of the suit, the suit was barred. While the court did consider the period of representation it was for the purpose of determining at what time damages occurred. Nowhere does the court indicate that it is applying the continuous representation doctrine. Nor was any consideration of the period of representation determinative of the outcome. Cases that have applied this doctrine use it to toll the running of the statute so as to permit a claim that would otherwise be barred. See Wall v. Lewis, 393 N.W.2d 758 (N.D.1986). Since the May decision the Minnesota Court of Appeals has issued several unpublished opinions addressing when the statute of limitations begins to run in a legal malpractice case and in only one case did it find that the continuous representation doctrine applied.[1]

---

1. In Schuster v. Magee, 1992 WL 213566 (Minn. App.1992) the court held that the continuous representation doctrine applied, citing as support Wall v. Lewis, 393 N.W.2d 758. In three decisions published after Schuster the court determined when the statute began to run by looking to the time when damage occurred and did not apply the continuous representation doctrine.

Although unpublished opinions do not have precedential value pursuant to MSA § 480A.08 subd. 3(c), they may be considered for their persuasive value. *Dynamic Air, Inc. v. Bloch,* 502 N.W.2d 796, 800 (Minn. App.1993). The Court finds they indicate that the continuous representation doctrine is not controlling in all legal malpractice cases.

■ The Court finds that if *Anoka* does suggest that the continuous representation doctrine applies in some cases, it does not show that it should apply to Plaintiffs' case. In *Anoka* the alleged negligence was a breach of the law firm's duty to oversee the plan during the time it worked for the group. The negligence concerned one obligation breached repeatedly throughout the period of representation. In the present case, the alleged negligence does not relate to a breach that occurred repeatedly from the time Defendant began advising Plaintiffs on their funeral home business in 1984 until representation ended in May 1990. Rather it concerns Zellmer's alleged failure to properly advise Plaintiffs about the use of funds from the perpetual care account and the pre-need account and Zellmer's alleged failure to advise Fletcher to do an accounting of the trust accounts after receiving them from the previous owner. Zellmer's obligation to advise Fletcher in these matters did not result in an ongoing breach continuing throughout the period of representation until May 1990. Once the MNAG commenced the consumer protection suit in August 1988, Zellmer can no longer be said to have had the obligation to advise Fletcher on the funds. The Court finds sufficient factual differences between *Anoka* and the present case to conclude that the continuous representation doctrine does not apply to Plaintiffs' claims.

■ As the continuous representation doctrine does not apply, to determine when the statute begins to run, as discussed above, the Court looks to see when damage occurred. If the Court views the facts in the

light most favorable to the non-moving party and finds that Zellmer was negligent in giving advise on the use of funds and doing an accounting, and that Fletcher relied upon this advice, he was injured when the MNAG served him with a summons and complaint in the civil suit on August 2, 1988. *See Grimm,* 392 N.W.2d at 42 (damage occurred as soon as deficient contract for deed signed and not when Plaintiffs' lost the property); *May,* 427 N.W.2d at 288 (IRS lien was cloud on title to property and constituted damage); *Sabes,* 431 N.W.2d at 917 (distributing brochure without copyright protection was injury giving rise to damage). Plaintiffs did not commence the suit until November 5, 1994, more than six years after damage occurred, and accordingly the action is time-barred.

Accordingly, upon review of all the files, records and proceedings herein, IT IS HEREBY ORDERED That:

1. Defendants' Motion for Summary Judgment is GRANTED.

2. Judgment be entered as follows: IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Plaintiffs' claims against Defendant are dismissed in their entirety with prejudice.

*See Henning v. Krahmer and Bishop P.A.,* 1993 WL 140869 (Minn.App.1993) (damage from an alleged negligently drafted will accrued when the will was drafted); *Hoffman v. Guzinski,* 1994 WL 396328 (Minn.App.1994) (damage from a lawyer's alleged negligence in drafting a contract for deed accrued at the time the deed entered into force and not when the lawyer's representation ended); *Litherland v. Meshbesher,* 1995 WL 1467 (Minn.App.1995) (continuous representation doctrine not applied).