**Harvey GRIMM, et al., Appellants,**

v.

**William T. O'CONNOR, et al., Respondents.**

**No. C9-86-317.**

Court of Appeals of Minnesota.

Aug. 19, 1986.

George G. Seltz, Minneapolis, for appellants.

Daniel A. Gislason, New Ulm, for respondents.

Heard, considered and decided by PARKER, P.J., and WOZNIAK and SEDGWICK, JJ.

## OPINION

PARKER, Judge.

This appeal is from a grant of summary judgment to respondents William O'Connor and his law firm, Berens, Rodenberg, O'Connor, Olson & Hinnenthal (f/k/a Berens, Rodenberg & O'Connor). Appellants Winton's of New Ulm, Inc. (a Minnesota corporation), and Harvey and Arlene Grimm (majority shareholders and officers of Winton's) brought this action alleging O'Connor had negligently represented them during the settlement of a lawsuit in 1973. Because we agree with the trial court's conclusion that the action is barred by the statute of limitations and because we find no issues of material fact exist, we affirm.

## FACTS

In August 1972 the Grimms executed a purchase agreement to sell the Holiday Motel in New Ulm, Minnesota, to William C. Pell and Eldor N. Gulden. This purchase agreement specified, among other things, that on July 30, 1982, the Grimms would refinance the property to pay off the balance of an underlying contract for deed, that Pell and Gulden would cooperate in securing this refinancing, and that if the interest rate on the refinancing exceeded 10 percent, Pell and Gulden would pay the excess. O'Connor was retained and represented the Grimms during this transaction.

The Grimms thereafter attempted to cancel the agreement, presumably because Wayne Westgor (a minority shareholder of Winton's) had threatened Harvey Grimm with a lawsuit if he went through with the sale. Pell and Gulden brought a suit for specific performance, and Gulden also brought an action to recover his real estate commission under a listing agreement. O'Connor was again retained by the Grimms.

The specific performance action was dismissed prior to trial, and only the suit for Gulden's unpaid commissions remained. O'Connor contends that the Grimms expressed a renewed interest in selling the

motel to Pell and Gulden and that he recommenced negotiations. On May 7, 1973, the day before trial was scheduled to begin, O'Connor claims he hand-delivered a letter to the Grimms explaining that Gulden would settle for $7,500 and outlining new terms proposed by Pell and Gulden for the purchase of the motel. One of those terms was that Pell and Gulden "want to eliminate the [provision] to pay you in excess of 10% on interest if you should run into that kind of charge when you have to pay off your contract." The Grimms insist they never received this letter.

At the courthouse the next day, the Grimms reached a settlement with Pell and Gulden. A transcript of the proceedings indicates that the stipulation was read into the record, reduced to writing dated May 8, 1973, and then signed by all parties in the presence of the trial judge. The trial judge specifically recited into the record the fact that he had observed the parties executing the stipulation.

Nevertheless, the Grimms contend they were not present during the reading of the entire stipulation into the record because Harvey Grimm became ill and they left the courtroom for a time. They further contend the stipulation was not reduced to writing immediately, but that O'Connor presented them with the written stipulation a few days later. They claim they signed the stipulation without reading it, believing that it contained the same terms and conditions as in the original purchase agreement, including the 10 percent interest ceiling clause.

On May 31, 1973, O'Connor presented the Grimms with a contract for deed containing terms similar to the written stipulation. They allegedly signed the contract for deed without reading it and again claim they assumed it contained the desired refinancing clause.

The Grimms state that they were relying heavily on O'Connor's advice during the negotiations and settlement of the lawsuit because Harvey Grimm was "in ill health mentally" and was in a "very fragile and unstable mental condition." O'Connor denies having any knowledge of any infirmity of Harvey Grimm at any time relevant to these transactions. Soon after signing the contract for deed, Harvey Grimm claims he suffered a severe mental breakdown and voluntarily committed himself to a hospital in Mankato. The record contains no documentation of this hospitalization or of Harvey Grimm's illness.

Harvey Grimm sent two letters to O'Connor during this period. On July 15, 1973, he wrote: "i also was taken on the 7&% interest after the * * * contract comes due they should pay that interest increase we were taken because they came prepared to do just that * * *." On January 29, 1974, he again made a statement regarding the interest clause: "[T]he way this was so ridiculous 7% interest and in 82 when i have to refinance i may pay a lot more interest." O'Connor contends these letters establish that the Grimms were always aware of the exclusion of the interest clause. Harvey Grimm, however, insists these letters merely refer to a 7 percent interest ceiling he was attempting to procure during negotiations.

The Grimms claim they did not discover the clause had been omitted until June 1982, when they sought to refinance the property to pay off the underlying contract for deed. Pursuant to the terms of the stipulation, they were obligated to pay the entire cost of refinancing at the rate of 17 percent. In May 1984 the Grimms commenced this action alleging O'Connor negligently advised and represented them when he failed to inform them of the exclusion of the interest clause in the stipulation and the contract for deed. O'Connor subsequently moved for summary judgment dismissing the complaint on the grounds that the statute of limitations had run. The trial court granted the motion, and a judgment of dismissal was entered.

## ISSUE

Did the trial court err in granting summary judgment?

## DISCUSSION

Summary judgment may be granted if "there is no genuine issue as to any material fact and * * * either party is entitled to a judgment as a matter of law." Minn.R. Civ.P. 56.03.

On appeal from a summary judgment it is the function of this court only to determine (1) whether there are any genuine issues of material fact and (2) whether the trial court erred in its application of the law.

*Betlach v. Wayzata Condominium,* 281 N.W.2d 328, 330 (Minn.1979). The evidence must be viewed in the light most favorable to the one against whom summary judgment was granted. *Abdallah, Inc. v. Martin,* 242 Minn. 416, 424, 65 N.W.2d 641, 646 (1954).

■ The trial court granted summary judgment because the action was not commenced within six years as required by the statute of limitations. *See* Minn.Stat. § 541.05, subd. 1(5) (1984). A right of action does not accrue and the statute of limitations does not begin to run until damage occurs. *Bonhiver v. Graff,* 311 Minn. 111, 248 N.W.2d 291 (Minn.1976) (action against accountant and accounting firm for negligence); *Dalton v. Dow Chemical Co.,* 280 Minn. 147, 158 N.W.2d 580 (1968) (products liability action). The trial court concluded that the Grimms were damaged "as soon as they executed the contract for deed" in 1973. The Grimms argue that they were not damaged until 1982, when they had to obtain new financing for the property.

■ The Grimms contend their cause of action against O'Connor did not arise in 1973 because they did not know of their damages until 1982. Absent an allegation of fraudulent concealment on the part of a defendant, however, ignorance of a cause of action does not toll the accrual of a cause of action. *Dalton,* 280 Minn. at 153, 158 N.W.2d at 584; *see also Wild v. Rarig,* 302 Minn. 419, 449, 234 N.W.2d 775, 794 (Minn.1975). The Grimms do not allege fraud on the part of O'Connor. Moreover, Harvey Grimm's letters to O'Connor fol-lowing the transaction allude to the absence of the interest clause, and his admission that he "was taken" constitutes a specific allegation of damage. These 1973 and 1974 statements indicate that the Grimms' cause of action arose at that time.

The Grimms also argue that they were not damaged in 1973 because damages were unascertainable at that time; they reason that had they been obligated to refinance in 1986, they would have incurred no damages because the prime lending rate is now below 10 percent. The statute of limitations begins to run when the cause of action comes into being "even though the ultimate damage is unknown or unpredictable." *Dalton,* 280 Minn. at 154, 518 N.W.2d at 585 (quoting *Brush Beryllium Co. v. Meckley,* 284 F.2d 797, 800 (6th Cir. 1960)). A contract for deed has an ascertainable market value, and one with an interest escalator clause during a period of inflation is of considerably greater value than one without. The Grimms, knowing their contract for deed had no interest escalator clause in 1973, were aware of an ascertainable damage. We therefore conclude that the Grimms' action was barred by the statute of limitations and that the trial court properly granted summary judgment.

We also conclude that summary judgment was appropriate because there is no factual basis for the Grimms' action against O'Connor. The Grimms allege that O'Connor negligently failed to inform them of the contents of a settlement to which they agreed. However, the evidence conclusively shows that they had both actual and constructive notice of those contents and that they had reason to know of the omission of the clause: according to the transcript of the proceedings, the stipulation was read in open court and signed in the presence of the trial court judge; the Grimms had an opportunity to read each document before signing; and both the stipulation and the contract for deed were filed and recorded. Although Harvey Grimm contends he was mentally ill at the time, he does not claim he was incompe-

tent. By commenting on the value of his own capacity to contract, his allegations of mental illness are self-serving and conclusory, unsupported by any documented medical evidence. We therefore affirm the grant of summary judgment on the absence of a genuine fact issue.

The parties finally raise an issue involving the collateral estoppel effect of a prior court's ruling in a similar action. Having affirmed the trial court on different bases, we find it unnecessary to discuss this issue.

## DECISION

The trial court's grant of summary judgment is affirmed.

Affirmed.