**James G. ANDERSON, et al.,**
**Appellants,**

v.

**Estate of Bettina BENSON,**
**Respondent.**

**No. C7–86–199.**

Court of Appeals of Minnesota.

Oct. 7, 1986.

James R. Coleman, Jr., Chisago City, for appellants.

Michael C. Hutchinson, Clinton & O'Gorman, P.A., Cottage Grove, for respondent.

Heard, considered, and decided by POPOVICH, C.J. and WOZNIAK and RANDALL, JJ.

## OPINION

WOZNIAK, Judge.

James G. Anderson and the Olde Banken, Inc. appeal from a judgment entered in the district court, Washington County, following a bench trial. Appellants did not move for a new trial. They assign errors involving procedural and evidentiary rulings occurring at trial. We affirm the trial court.

## FACTS

This case arises out of the sale of a restaurant business. The Olde Banken, Inc. is a corporation which owns and operates a bar and restaurant in Chisago County. Anderson is the president and sole shareholder of the corporation. Prior to February 11, 1981, Bettina Benson was the president and sole shareholder.

In December 1980, Benson and Anderson met to negotiate the sale of the corporation to Anderson. They agreed upon a sale price of $245,000 and executed a contract for deed on February 11, 1981, incorporating the agreed-upon terms.

Anderson and the corporation commenced an action for conversion against Benson in 1982. In 1983, plaintiffs filed an amended complaint alleging five additional counts of corporate asset diversion.

Count one of the amended complaint alleged the original claim for conversion.

Count two alleged failure to relinquish corporate assets, including the corporate checking account. Count three alleged failure to relinquish business records. Count four alleged commingling of funds with those of another corporation owned by Benson. Count five alleged that Benson's failure to file a 1979 corporate tax return may cause the corporation to incur future tax liability. Count six alleged that Benson removed corporate assets from the restaurant in the weeks immediately preceding the execution of the contract for deed.

Benson died in 1984. Her estate was substituted as defendant. Trial was eventually set for June 1985.

Before trial, the estate brought a motion, pursuant to Minn.R.Civ.P. 12, to dismiss counts two through six of the amended complaint for failure to state a claim upon which relief could be granted. The court dismissed count three immediately before trial, and took the motion for dismissal of the remaining counts under advisement.

The case was tried to the court. Three witnesses testified. Plaintiffs called Anderson and Melroy Aslakson, a certified public accountant who offered expert testimony. The estate called Dominic Alfonso, a licensed public accountant who served as accountant for the corporation when Benson was the president and sole shareholder.

With regard to count one of the amended complaint alleging conversion, the trial court found that Benson had diverted some corporate assets after February 11, 1981, the date of execution of the contract for deed. The court ordered that judgment be entered in favor of plaintiffs in the amount of $12,942.28. Count one is not at issue in this appeal.[1]

As to counts two, four, five, and six, the court found that plaintiffs had failed to prove these claims by a preponderance of the evidence. In addition, the court held,

pursuant to the estate's Rule 12 motion, that these counts failed to state claims upon which relief could be granted.

The trial court also held that the opinion of Aslakson, plaintiffs' expert, was not based on an adequate factual foundation because it failed to consider source documentation used to compile the exhibits examined by Aslakson in forming his opinion. The court therefore rejected Aslakson's opinion as speculative.

Plaintiffs appeal from the trial court's judgment.

## ISSUES

1. Did the trial court err in ruling that counts two, four, and five of plaintiffs' complaint failed to state claims upon which relief could be granted?

2. Did the trial court err in ruling that plaintiffs had failed to prove damages arising from decedent's failure to file a 1979 corporate income tax return by a preponderance of the evidence?

## ANALYSIS

1. Plaintiffs did not make a motion for a new trial or for amended findings. They appeal directly from the judgment entered pursuant to the trial court's findings and conclusions. The Minnesota Supreme Court has recently reaffirmed the long-standing rule that procedural and evidentiary rulings occurring at trial are subject to appellate review only if there has been a motion for a new trial in which such matters were assigned as error. *Sauter v. Wasemiller*, 389 N.W.2d 200 (Minn.1986). This court is limited to determining whether the evidence sustains the findings of fact and whether the findings sustain the conclusions of law and the judgment. *Gruenhagen v. Larson*, 310 Minn. 454, 458, 246 N.W.2d 565, 569 (1976).

---

**1.** This claim related to Anderson's assumption of the $115,433.70 outstanding balance of a Small Business Administration (SBA) loan which Benson had taken out. The day after the contract for deed was executed, Benson borrowed $12,379.60 from the SBA, representing the remaining credit available on the loan. She subsequently made a $2,843.76 payment to the SBA. This conduct caused Anderson to incur an additional SBA indebtedness of $9,535.84, upon which interest of $3,406.44 had accrued to the date of the trial, for a total of $12,942.28.

Count two of plaintiffs' amended complaint alleged that decedent failed to relinquish corporate assets to them. Plaintiffs' expert testified that there were checks made out to cash and various unsubstantiated expenses in the total amount of $94,021.13. All of these checks were written before the sale of the corporation. The expert testified that, under the rules of accounting, in the absence of substantiation of these amounts as business expenses, they should have been charged to a draw account as loans to a shareholder, i.e., Benson. Under standard accounting practice, such loans receivable are assets of the corporation which must be repaid by defendant.

Defendant's expert testified that, when Benson owned the corporation, it was run on a cash basis. He testified that the $94,021.13 figure arrived at by plaintiffs' expert was based on insufficient information, because the expert did not have access to the invoices, daily reports, and other "source documents" relating to cash transactions. The trial court later ruled all of plaintiffs' expert's testimony inadmissible for lack of foundation on this basis. Decedent, in her deposition, and defendant's expert testified that $87,000 was paid out in cash to subcontractors who did extensive remodeling work in converting the premises from a bank to a restaurant. This testimony was unrebutted by plaintiffs.

Plaintiffs also alleged that Benson failed to turn over the corporate checking account. At trial, plaintiffs introduced a bank statement indicating that, on the date of the sale, February 11, 1981, the balance in this account was $729.60. Anderson testified that he never received this money from decedent. Benson testified in her deposition that she never turned it over. Plaintiffs did not establish, however, that the parties agreed that the outstanding balance in the checking account was to be turned over as one of the terms of the sale.

With respect to three items, plaintiffs did establish the existence of irregularities in corporate accounting procedures prior to the sale of the Olde Banken in February 1981. The first of these items is a $7,000 charge to an account entitled "liquor license" in 1979. Plaintiffs introduced an affidavit of a deputy clerk of Chisago City which indicates that only $2,800 was actually paid for the liquor license for the period October 1, 1979 through September 30, 1980. Defendant's expert conceded that a $4,200 discrepancy existed.

The second item is a check drawn on the corporate account in the amount of $4,020.78 for Ramsey County property taxes. This payment was made in June 1980, before the sale of the corporation. Defendant's expert conceded that this sum was not a proper charge against the corporation.

The third item is a check for $758.76 payable to Associated Insurance. This payment was made in May 1980, before the sale of the corporation. This expense does not appear in the corporate accounts as an expense of the corporation. Defendant offered no evidence indicating that this amount was for a corporate expense.

Count four of the amended complaint alleged commingling of corporate assets belonging to the Olde Banken and Stephen and Victor's, Inc. (a.k.a. Benson Liquors), a St. Paul bar owned by the decedent. The trial court found that on one occasion decedent purchased Olde Banken inventory on a Stephen and Victor's account to insure that a veteran salesman assigned to Stephen and Victor's, who was a personal friend of the decedent, received a commission on the sale. This finding is substantiated by decedent's deposition testimony and by a letter from the credit manager of the liquor wholesaler. This incident took place in May 1980, before the sale of the corporation. Decedent testified that she personally transported the inventory to the Olde Banken. Plaintiffs offered no evidence to indicate that this shipment was used to benefit Stephen and Victor's, Inc. rather than the Olde Banken.

Count six of the amended complaint alleged removal by the decedent of stock, goods, and other assets from the corporation in the months immediately preceding

the execution of the contract for deed. Plaintiffs introduced no evidence whatsoever in support of this claim.

■ In all, plaintiffs showed, at best, that Benson spent $8,249.94 from the corporate account without substantiating that the expenditures were for a corporate purpose. Under the facts of this case, however, these expenditures are not recoverable by the corporation. All of these expenditures were made before the sale of the business to Anderson on February 11, 1981. The parties do not dispute Anderson had no interest in the corporation before this date.

The loan receivable rule of accounting has no application in this situation. Before she sold the corporation, Benson was the sole officer and shareholder. "[I]f an officer of the company owns all the stock 'he may use the corporate assets as he sees fit and there can be no misappropriation of corporate assets by him.'" *L.R. Schmaus Co. v. Commissioner*, 406 F.2d 1044, 1045 (7th Cir.1969) (quoting Fletcher, *Cyclopedia of Corporations* § 1103 (1967)).

■ Of course, Benson and the corporation were separate entities. "The ownership of all the stock and the absolute control of the affairs of a corporation do not make that corporation and the individual owner identical, in the absence of a fraudulent purpose in the organization of the corporation." *M. McDonough Corp. v. Connolly*, 313 Mass. 62, 66, 46 N.E.2d 576, 579 (1943). But absent fraud or violation of public policy, Benson was free to dispose of the corporate assets as she pleased and she was not obliged to favor the interests of the corporation over her own in every action she took. *See In re Tufts Electronics, Inc.*, 746 F.2d 915, 917 (1st Cir.1984).

Anderson had an opportunity to examine the corporate books. We can only assume that the purchase price he paid reflected what he considered fair value for the corporation in terms of its assets and liabilities at the time of the sale. Whatever funds Benson may have used for non-corporate purposes months or years before the sale was not reflected as a corporate asset at the time the parties were negotiating the purchase price. Anderson has not alleged that the corporation has incurred any additional unforeseen liability since the sale as a result of any accounting irregularities taking place before the sale. The trial court did not err in ruling that he had failed to state a claim upon which relief can be granted.

2. Count five of the amended complaint alleged a failure of decedent to file a federal corporate income tax return for fiscal year 1979. Plaintiffs contended that the corporation will be unable to document a $28,665 net operating loss deduction.

■ However, plaintiffs introduced no evidence of a present or threatened liability to the federal government. Anderson admitted in his deposition that he had not been notified of an audit or of any civil or criminal sanction that could be imposed regarding the 1979 corporate income tax return.

Speculative, remote, or conjectural damages are not recoverable. *Cardinal Consulting Co. v. Circo Resorts, Inc.*, 297 N.W.2d 260, 267 (Minn.1980); *Leoni v. Bemis Co.*, 255 N.W.2d 824, 826 (Minn. 1977). The trial court did not err in finding that "[p]laintiffs failed to demonstrate by a preponderance of the evidence any damages they have sustained or will sustain as a result of a failure to file the 1979 corporate income tax return."

**DECISION**

The trial court did not err in ruling that plaintiffs failed to state a claim upon which relief could be granted in counts two, four and five of their complaint and that plaintiffs failed to prove by a preponderance of the evidence any damages sustained as a result of the allegation in count six.

The decision of the trial court is affirmed.