Frances MAY, et al., Appellants,

v.

FIRST NATIONAL BANK OF GRAND FORKS, NORTH DAKOTA, Massee, Leonard and Lindquist, et al., Respondents.

No. C6–88–604.

Court of Appeals of Minnesota.

Aug. 16, 1988.

Review Denied Oct. 26, 1988.

Greggory J. Woods, James H. Wills, Minneapolis, for appellants.

James L. Lamb, Degnan McElroy Lamb Camrud Maddock & Olson, Ltd., Grand Forks, N.D., for First Nat. Bank of Grand Forks, North Dakota.

David S. Maring, Steven L. Marquart, Cahill & Maring, P.A., Fargo, N.D., for Massee, Leonard and Lindquist, et al.

Heard, considered and decided by RANDALL, P.J., and PARKER and MULALLY *, JJ.

## OPINION

RANDALL, Judge.

This appeal is from a grant of summary judgment to respondents First National Bank of Grand Forks (First Bank), Massee,

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

Leonard & Lindquist (ML & L) and the estate of Edgar Massee (Massee). Appellants sued ML & L and Massee [1] for legal malpractice, and First Bank for breach of fiduciary duty by a personal representative. ML & L and Massee moved for summary judgment on the ground that the six-year statute of limitations governing a legal malpractice action had run. First Bank moved for summary judgment on the ground that the six-month statute of limitations governing a claim of breach of fiduciary duty by a personal representative had run. The trial court granted summary judgment relief to all defendant-respondents. We affirm the trial court's grant of summary judgment on behalf of ML & L and Massee.

We reverse the grant of summary judgment for respondent First Bank, finding that, even though discharged as a personal representative, a triable fact issue exists as to whether First Bank acted in a common law fiduciary capacity with appellants, thus extending the statute of limitations to six years.

## FACTS

On January 19, 1978, Mary Helen White (White) died testate, leaving farm property to appellants. First Bank was duly hired as personal representative of White's estate. First Bank also acted as appellants' special agent on tax matters, and as trustee for two appellants who were minors at the time of distribution. Legal advice on managing the property was provided by ML & L and Massee.

In April 1979 First Bank filed a federal estate tax return on the farm under 26 U.S.C. § 2032A, which required a qualified heir to "materially participate" in the operation of the farm for fifteen years after decedent's death. "Material participation" meant the qualified heir had to retain an equity interest in the property and assume some financial risk in its operation. Appellants gave their written consent to classify

1. Edgar Massee was at all pertinent times a partner with the law firm of ML & L. Massee died in January 1983. When appellants commenced their lawsuit in 1987, they named as

the land under this section. Electing to proceed under this section allowed the family farm to be included in the gross estate at its "current use value," which was substantially lower than the fair market value based on its "highest and best use." If the material participation requirement was not satisfied, an additional estate tax would be imposed, constituting a recapture of taxes saved through the special classification.

On January 31, 1979, First Bank entered into a cash rent lease of the farm for crop years 1979 through November 1, 1981. The lessees were both family members of the deceased. In May 1980 First National wrote a letter to appellants, copy to Massee, explaining the special use valuation of the property and noting that the IRS had objected to such a qualification.

On October 6, 1980, an Order of Complete Settlement of the Estate and Decree of Distribution was entered. ML & L sent a final billing to First Bank for legal services rendered from January 30, 1978 through February 10, 1981. No further services were provided to the estate by the ML & L firm after February 10, 1981. The commencement date of this law suit was October 22, 1987.

On August 6, 1981, First Bank entered into a second cash rent lease on the property, also with family members, for crop years 1982 and 1983. The lease was drawn up by an attorney not a party to this proceeding. The language in the lease regarding the special tax valuation, however, was identical to the language used in the 1979 lease drafted by ML & L.

In May 1985, First Bank informed appellants that the cash rental of the farm to a family member was not considered a qualified use by the IRS because there was no "at risk situation involved in its leasing." First Bank stated it did not agree with the IRS position and felt it was unsupported by documentation or case law, but wanted to point out to appellants the position the IRS was taking.

defendants both the law firm and the deceased personal representative. That at all material times Massee was acting as a member of defendant ML & L is not an issue.

The IRS initially filed a lien against the property in the amount of $114,460 on January 19, 1980, and, by written letter to the heirs, notified them of the lien and a potential deficiency. In February 1986 the IRS issued deficiency notices to recapture estate taxes saved through the special valuation of the property.

Appellants began this suit by service of process October 22, 1987. The trial court granted summary judgment to Massee and ML & L, finding that over six years had elapsed since the cause of action arose. The court granted summary judgment to First Bank, finding the six-month statute of limitations for breach of fiduciary duty by a personal representative was applicable, and that it expired six months after First Bank's discharge as personal representative on February 10, 1981.

## ISSUES

1. Did the trial court err by granting summary judgment to respondent attorneys ML & L and Massee based on the applicable six-year statute of limitations?

2. Did the trial court err by granting summary judgment to First National Bank of Grand Forks based on the six-month statute of limitations applied to personal representatives?

## ANALYSIS

Summary judgment is proper when the nonmoving party fails to provide the court with specific facts indicating the existence of a genuine issue of fact. *Hunt v. IBM Mid America Employees Federal Credit Union*, 384 N.W.2d 853, 855 (Minn.1986). All material facts affecting the result or outcome of a case must be both disclosed and undisputed. *Rossman v. 740 River Drive*, 308 Minn. 134, 137, 241 N.W.2d 91, 93 (1976).

On appeal from a summary judgment this court must determine whether there are any genuine issues of material fact and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn. 1979); Minn.R.Civ.P. 56.03. Additionally, the evidence must be viewed in the light most favorable to the one against whom summary judgment was granted. *Abdallah, Inc. v. Martin*, 242 Minn. 416, 424, 65 N.W.2d 641, 646 (1954).

### I.

### *Legal Malpractice Claim—ML & L, Massee*

■ The statute of limitations for a claim of legal malpractice is six years. Minn.Stat. § 541.05, subd. 1(5) (1986). This court has addressed the issue of when the statute of limitations begins to run on a legal malpractice claim. In *Grimm v. O'Connor*, 392 N.W.2d 40 (Minn.Ct.App. 1986), respondent was hired as appellants' attorney to execute a contract for deed. Appellants claimed they did not read the contract before signing it in 1973, but assumed it contained a refinancing clause stipulated to previously. Appellants claimed they did not discover the omission until June 1982, when they sought to refinance the property. In May 1984, appellants commenced a legal malpractice suit against respondent for failing to inform them that the refinancing clause had been excluded from the contract.

The court held that appellants had both actual and constructive notice of the terms in the contract and, therefore, were aware of an ascertainable damage in 1973. *Id.* at 43; *see Bonhiver v. Graff*, 311 Minn. 111, 117, 248 N.W.2d 291, 296 (1976) (the statute of limitations for a legal malpractice action begins to run when the damage occurs). The court dismissed appellants' claim, stating the statute of limitations begins to run "even though the ultimate damage is unknown or unpredictable." *Grimm*, 392 N.W.2d at 43 (quoting *Brush Beryllium Co. v. Meckley*, 284 F.2d 797, 800 (6th Cir. 1960)).

Here, appellants argue the trial court erred in granting summary judgment. Appellants claim there was legal malpractice on November 1, 1981, when the 1979 cash rent lease expired, thus subjecting them to potential tax liability. Appellants contend ML & L and Massee's failure to advise them that this cash rent lease would result

in a recapture of estate taxes was malpractice.

Appellants then argue, based on the holding in *Bonhiver*, if the date of damage is the trigger to commence the running of the statute, the six-year statute of limitations did not commence until February 18, 1986, when the IRS assessed an actual tax deficiency. We disagree. The January 19, 1980, IRS lien in the amount of $114,416 constituted at least a cloud on title. A cloud on a title to real estate is damage. Time, money and energy have to be expended, either to pay it off or to prove that it should not exist, and have it formally removed.

The trial court determined that actual damage, if any, had to occur between May 1, 1979, the date the first cash lease payment was accepted, and February 10, 1981, the date First Bank was discharged as personal representative and the last date of any legal services provided to appellants by the defendant law firm. We agree.

The trial court properly ruled that the six-year statute of limitations involving ML & L and Massee began to run on February 10, 1981. Since the lawsuit was not commenced until October 1987, it was time barred by Minn.Stat. § 541.05, subd. 1(5).

## II.

### *Breach of Fiduciary Duty—First Bank*

The statute of limitations on proceedings against a personal representative for breach of fiduciary duty is six months after filing of the closing statement. Minn.Stat. § 524.3–1005 (1986). First Bank argues that no confidential relationship existed between the parties after February 10, 1981, when it was discharged as personal representative for the estate. First Bank argues the statute of limitations as to them expired six months after February 10, 1981, and thus the lawsuit commenced in October 1987 is barred by several years. That argument would be correct if First Bank's relationship to appellants was solely that of personal representative of the estate.

Appellants claim First Bank continued to act in a fiduciary capacity beyond the date it was discharged. If First Bank acted in a common law fiduciary capacity, any negligence in that capacity would be subject to the general statute of limitations of six years. Minn.Stat. § 541.05. Appellants allege that First Bank, after February 10, 1981, and continuing up to February 18, 1986, performed various acts, and that a fiduciary relationship existed to at least six years within commencement of this lawsuit. Appellants point out that First Bank collected rent on the property, entered into a second cash rent lease for crop years 1982 and 1983, and managed the property as trustee for two minor appellants after the estate was closed. Moreover, they claim it acted as appellants' special tax advisor and liason with the IRS, advising them in 1985 of the IRS's position that cash rental of a farm to a family member was unqualified use, and at that time informed appellants it did not agree with the IRS and felt the IRS's position was unsupported by law. Appellants claim First Bank's opinion led them to believe there was no legal support for the IRS position, that they relied on, and had a right to rely on, First Bank's expertise in the matter.

We find that whether a fiduciary relationship existed between First Bank and appellants after First Bank was discharged is a question of fact. *Toombs v. Daniels*, 361 N.W.2d 801, 809 (Minn.1985). A fiduciary relationship may be found to exist when the evidence indicates that one of the parties enjoyed superior or excessive influence over the other party. *Minnesota Timber Producers v. American Mutual Insurance*, 766 F.2d 1261, 1268 (8th Cir. 1985); *see Klein v. First Edina National Bank*, 293 Minn. 418, 422, 196 N.W.2d 619, 623 (1972) (to make a prima facie showing of a fiduciary relationship, evidence must indicate defendant knew or ought to have known plaintiff was placing her trust and confidence in defendant and depended on defendant to look out for her interests). A greater access to facts and legal resources, when combined with a confidential relationship, gives rise to a fiduciary relationship.

*Minnesota Timber Producers,* 766 F.2d at 1267. Also, "disparity of business experience and invited confidence" are a basis for finding such a relationship. *Murphy v. Country House, Inc.,* 307 Minn. 344, 352, 240 N.W.2d 507, 512 (1976).

It is a disputed question of material fact as to when First Bank's fiduciary relationship with appellants actually ended. If a common law fiduciary relationship is found to have existed after First Bank was discharged as a personal representative, the statute of limitations would change from six months to six years. Minn.Stat. § 541.05. If this fact question as to existence of a fiduciary duty is resolved favorably to appellants by a factfinder, appellants' lawsuit is timely. We express no opinion as to the merits of appellants' claim against First Bank. If a factfinder resolves the timeliness issue in favor of appellants, only then would it consider the questions of breach of duty, proximate cause, and damages. We reverse the grant of summary judgment as to First Bank and remand for trial.

## DECISION

The trial court properly granted summary judgment for ML & L and Massee. The six-year statute of limitations for legal malpractice time barred appellants' cause of action against the law firm.

The trial court erred by granting summary judgment for First Bank. As a personal representative, claims against First Bank were barred by the passage of time. But, a material fact question remains as to whether First Bank continued in a fiduciary capacity with appellants after being discharged as appellants' personal representative. If the factfinder resolves that issue in favor of appellants, the factfinder would then need to hear the merits of appellants' claim.

Affirmed in part, reversed in part and remanded.