**Al HERRMANN, et al., Appellants,**

v.

**McMENOMY & SEVERSON, et al., Respondents,**

**Bolin, Rucinski & Company, Ltd., et al., Defendants.**

No. C2–98–388.

Court of Appeals of Minnesota.

Aug. 25, 1998.

Review Granted Oct. 20, 1998.

Gary Stoneking, Stoneking Law Office, Minneapolis, for appellants.

Richard J. Thomas, Bryon G. Ascheman, Burke & Thomas, Saint Paul, for respondents.

Considered and decided by WILLIS, P.J., HUSPENI and SCHULTZ, JJ.*

## OPINION

WILLIS, Judge.

Appellants Al Herrmann and Al Herrmann Construction, Inc., challenge the district court's conclusion that their legal malpractice action is time-barred. We reverse and remand.

## FACTS

For purposes of summary judgment, the parties stipulated to the relevant facts. In 1986, respondents are attorneys who assisted appellant Al Herrmann, the sole owner and employee of appellant Al Herrmann Construction, Inc. (AHC), in establishing a trust and pension plan, of which Herrmann was sole trustee and eventual beneficiary. The trust became a partner in a partnership named Bridlewilde that was created to develop and sell real estate. Between 1987 and 1993, AHC transferred property to Bridlewilde to be held pending sale; Bridlewilde then re-sold the property to AHC for sale to the ultimate purchaser. Such transactions

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by ap-

pointment pursuant to Minn. Const. art. VI, § 10.

between related parties are prohibited under federal tax law and require payment of a special excise tax, which AHC did not pay.

In 1989, respondents terminated their attorney-client relationship with Herrmann and his related entities. In 1993, appellants terminated their relationship with their accounting firm, the other defendants in this case. Appellants' new accountants informed them that the transactions between AHC and Bridlewilde were prohibited and could subject AHC to tax liability. In May 1993, AHC paid its new accountants to terminate the trust.

In May 1996, the IRS audited AHC and discovered the prohibited transactions. The IRS issued a draft assessment in the amount of $1.4 million against AHC, but the final amount of liability has not been determined.

On November 7, 1996, Herrmann and AHC commenced an action against their former attorneys and accountants, alleging legal and accounting malpractice in failing to warn of the illegality of the transactions. Respondents moved for summary judgment on the ground that the statute of limitations had expired. The district court granted the motion, concluding that the limitation period had begun to run on the date of the first prohibited transaction in 1987. The court ordered immediate entry of judgment for respondents, from which Herrmann and AHC appeal. Because we conclude that the statute of limitations began to run in 1993, we reverse and remand.

## ISSUE

Did the district court err in concluding that appellants' action was time-barred?

## ANALYSIS

This court reviews de novo a grant of summary judgment to determine whether there is a disputed issue of material fact and whether the district court correctly applied the law. *Zip Sort, Inc. v. Commissioner of Revenue*, 567 N.W.2d 34, 37 (Minn.1997). Where the facts are not in dispute, the question of when a statute of limitations begins to run is one of law, which this court also reviews de novo. *Weeks v. American Fami-*

*ly Mut. Ins. Co.*, 580 N.W.2d 24, 26 (Minn. 1998).

Legal malpractice actions are governed by the six-year statute of limitations provided in Minn.Stat. § 541.05, subd. 1(5) (1996). *See Sabes & Richman v. Muenzer*, 431 N.W.2d 916, 918 (Minn.App.1988) (applying Minn.Stat. § 541.05, subd. 1(5) (1986)), *review denied* (Minn. Jan. 25, 1989). In Minnesota, a statutory limitation period begins to run when "the cause of action accrues." Minn.Stat. § 541.01 (1996). A cause of action accrues when all of its elements exist to the extent that the claim could withstand a motion to dismiss. *Bonhiver v. Graff*, 311 Minn. 111, 117, 248 N.W.2d 291, 296 (1976). A legal malpractice claim generally accrues when damage occurs as a result of the attorney's negligence. *Sabes & Richman*, 431 N.W.2d at 918. The supreme court has specifically rejected the contention that a limitation period in a tort action runs from the date when damage is or reasonably should have been discovered:

> Courts have no power to extend or modify statutory limitation periods. Chapter 541 itself sets forth specific conduct or circumstances which will toll the running of the limitation periods. The legislature has not seen fit to provide a statutory tolling period to protect plaintiffs from their own ignorance although we held many years ago that such ignorance does not toll statutes of limitations.

*Johnson v. Winthrop Labs. Div. of Sterling Drug, Inc.*, 291 Minn. 145, 151, 190 N.W.2d 77, 81 (1971) (citations omitted). Thus,

> [t]he general rule is that ignorance of a cause of action which does not involve continuing negligence or trespass or fraud does not prevent the running of the statute of limitations.

*Toombs v. Daniels*, 361 N.W.2d 801, 809 (Minn.1985).

### I. Minnesota Legal Malpractice Precedent

The supreme court has not addressed the issue of when damage occurs for purposes of a legal malpractice claim, but this

court has done so in three cases.[1] First, where the plaintiffs alleged that their attorney was negligent in negotiating the settlement of a real estate claim that eliminated an interest escalator clause from their contract for deed, this court concluded that the cause of action accrued when the contract for deed was executed. *Grimm v. O'Connor*, 392 N.W.2d 40, 42, 43 (Minn.App.1986). This court rejected the plaintiffs' contention that their claim did not accrue until they refinanced the property at a higher interest rate nine years after the contract was executed; the court reasoned that a contract for deed "has an ascertainable market value" that was affected immediately upon its execution by the absence of the interest escalator clause. *Id.* at 43.

Next, in a case factually analogous to this, the plaintiffs alleged that their attorneys negligently failed to warn them that the real estate rental arrangement they had entered into would disqualify them from the favorable estate tax status they had claimed. *May v. First Nat'l Bank of Grand Forks*, 427 N.W.2d 285, 288–89 (Minn.App.1988), *review denied* (Minn. Oct. 26, 1988). The IRS filed a lien against the property in 1980 but did not assess a deficiency until 1986. This court reasoned that the 1980 lien constituted damage because it was a cloud on the property's title that required the expenditure of time and money either to pay the amount of the lien or to prove the lien was improper; it also agreed with the district court's conclusion

that actual damage had to have occurred sometime between the date the first rental payment was accepted in 1979 and the termination of the attorney-client relationship in 1981.[2] *Id.* at 289. The court did not specify whether the claim had accrued in 1979, 1980, or 1981, presumably because all possible dates of accrual were more than six years before the action was commenced.

Finally, in *Sabes & Richman*, the plaintiffs sued their attorneys for failing to register a copyright on an advertising brochure, which resulted in another company distributing a similar brochure. 431 N.W.2d at 917–18. This court concluded that the damage occurred and the cause of action accrued when the second company's brochure was distributed and not when the plaintiffs received notice of the certainty of the damage by losing their federal copyright infringement action. *Id.* at 918.

Respondents argue, and the district court agreed, that appellants' claim for legal malpractice could have withstood a motion to dismiss at the time of the first prohibited transaction in 1987. Respondents contend AHC at that time suffered a diminution in its market value similar to that of the contract for deed in *Grimm*. But by that rationale, the claim in *Sabes & Richman* should have accrued when the plaintiffs distributed a brochure without proper copyright protection; the market value of an uncopyrighted brochure design is less than that of a copyrighted design.

1. This court also addressed the issue in *Thiele v. Stich*, 416 N.W.2d 827 (Minn.App.1987), *rev'd on other grounds*, 425 N.W.2d 580 (Minn.1988). Because the supreme court accepted review and did not affirm this court's judgment as to the statute of limitations issue, this court's opinion in *Thiele* is not binding precedent. *See State v. Collins*, 580 N.W.2d 36, 43 (Minn.App.1998), *review denied* (Minn. July 16, 1998).

2. In medical malpractice cases, Minnesota courts deem a claim to accrue at the termination of treatment because of the difficulty of determining the exact timing of negligent conduct in such cases and because the trust relationship between doctor and patient inhibits the patient's ability to discover the malpractice. *Swang v. Hauser*, 288 Minn. 306, 309, 180 N.W.2d 187, 189–90 (1970). But while at least the second rationale could apply in legal malpractice cases, it would apply equally in cases alleging malpractice by accoun-

tants, to which the supreme court has applied the accrual rule rather than the termination-of-services rule. *Bonhiver*, 311 Minn. at 116–17, 248 N.W.2d at 296. We therefore decline to construe *May* as establishing that a legal malpractice claim accrues when the attorney-client relationship terminates. The suggestion in *May* that damage might have occurred as late as 1981 could also result from application of a theory that the statute was tolled by continuing negligence. *Cf. Sigurdson v. Isanti County*, 448 N.W.2d 62, 68 (Minn.1989) (finding that company's continuing discriminatory policies, which resulted in qualified woman receiving duties but not title or salary of male employees, constituted continuing violation that tolled statute of limitations). Because application of such a theory would not affect the outcome of this case, we need not decide here whether it might properly apply in the legal malpractice context.

On the facts of *Sabes & Richman*, there were three distinct points at which the court could have held the claim to have accrued: (1) when the plaintiffs were exposed to a risk of loss of money and intellectual property rights through the distribution of an inadequately protected brochure, (2) when that risk manifested itself in the form of another company's distribution of similar brochures, or (3) when it became evident through the plaintiffs' loss of their copyright infringement suit that their injury would not be compensated for by a damage award and that the injury had been caused by their attorney's negligence. This court chose the second alternative. But this appears inconsistent with *Grimm*, in which this court held the claim to have accrued when the clients were placed at a risk of pecuniary loss by their execution of a contract for deed without interest escalator protection, even though that risk would not have manifested absent an interest rate increase or sale of the contract.

If *Grimm* controls this case and a claim for legal malpractice accrues when an attorney's conduct places the client at the risk of pecuniary loss, even though that risk will not manifest absent an intervening factor, then respondents are correct that appellants' claim accrued on the date of the first prohibited transaction in 1987 because appellants at that point were exposed to a risk of tax penalties in the event of an audit. But if *Sabes & Richman* controls and damage is established only when the risk to which the attorneys' conduct exposes the clients manifests in some manner, then the claim did not accrue until 1993, when the plaintiffs expended money to terminate the trust. Determining which of these cases establishes the general principle and which is the exception requires a broader examination of Minnesota tort law.

## II. Creation Versus Manifestation of Risk

■ In another case involving an attorney who allegedly failed to warn his client that certain business activities were illegal, a federal court applying Minnesota law concluded that damage was established not at the time of the illegal activities but rather when the attorney general's office commenced suit against the plaintiff based on the transactions. *Fletcher v. Zellmer*, 909 F.Supp. 678, 685 (D.Minn.1995). We agree with the *Fletcher* court's implicit conclusion that when an attorney's conduct exposes the client to a risk of pecuniary loss or other injury, the element of damage is established only when that risk manifests itself in a way that makes such harm reasonably certain to occur.

■ In a tort action, a plaintiff must prove the fact of loss to a reasonable, although not absolute, certainty. *Leoni v. Bemis Co.*, 255 N.W.2d 824, 826 (Minn.1977). Damage is not established if it is purely "[s]peculative, remote, or conjectural." *Anderson v. Benson*, 394 N.W.2d 171, 175 (Minn.App.1986). There is no general test for when claimed damages become too speculative to support a cause of action. *Olson v. Aretz*, 346 N.W.2d 178, 183 (Minn.App.1984). But in *Anderson*, the buyer of a business sued the seller for negligence in failing to file a tax return; this court affirmed the district court's conclusion that, because the plaintiff produced no evidence that he had received notice of an audit or of any civil or criminal sanction, he had failed to prove that he had sustained or would sustain any damage as a result of the defendant's negligence. 394 N.W.2d at 175.

Because, for purposes of establishing damage, we find no meaningful distinction between failing to file a tax return and engaging in prohibited transactions that result in potential tax penalties, *Anderson* should effectively control this case. Numerous decisions in other jurisdictions also have held that where a legal or accounting malpractice action alleges negligent tax advice, damage is not established until the taxing authority acts. *See, e.g., International Engine Parts, Inc. v. Feddersen & Co.*, 9 Cal.4th 606, 38 Cal.Rptr.2d 150, 888 P.2d 1279, 1287 (1995) (holding that cause of action for accounting malpractice based on negligent tax advice accrues when IRS assesses deficiency); *accord, Snipes v. Jackson*, 69 N.C.App. 64, 316 S.E.2d 657, 659–60 (1984) (involving both le-

gal and accounting malpractice);[3] *see also* Tyler T. Ochoa & Andrew J. Wistrich, *Limitation of Legal Malpractice Actions: Defining Actual Injury and the Problem of Simultaneous Litigation*, 24 S.W.U. L.Rev. 1, 38–45 (1994) (discussing five points in audit process at which accrual has been placed in negligent tax advice cases, of which earliest is when taxpayer incurs attorney or accountant fees in responding to audit). The Minnesota Supreme Court, in medical and accounting malpractice cases, has also held limitation periods to run from the time that a risk of damage manifests in the form of tangible harm. *See Offerdahl v. University of Minnesota Hosps. & Clinics*, 426 N.W.2d 425, 429 (Minn.1988) (concluding that where defendants failed to disclose risks associated with insertion of intrauterine device, claim accrued when plaintiff was hospitalized with disease caused by device);[4] *Bonhiver*, 311 Minn. at 117–18, 248 N.W.2d at 296 (holding

that where accountants failed to warn insurance agent that insurance company was insolvent and its executives were embezzling money, resulting in agent's continuing to write policies with company, claim accrued when company collapsed and agent suffered loss of earnings, premiums paid, and clients' goodwill).

Because caselaw establishes a general rule that the mere creation of a risk of future harm does not give rise to a claim for damages sufficient to begin the running of the limitation period,[5] *Grimm* must represent an exception to that rule. We must now determine whether this case is within the scope of the exception.

### III. Defining Actual Injury

Minnesota is one of thirty states that, along with the District of Columbia, hold that

3. Under the reasoning of *Sabes*, it is likely that in Minnesota a cause of action for negligent tax advice accrues earlier than at the time of a final assessment because other events by that time have made it reasonably certain that the plaintiff, if he chooses to contest the taxing authority's determination, will be required to expend time and money to prove that an assessment is improper. *Cf. May*, 427 N.W.2d at 289. Because the plaintiffs in this case preempted IRS action by voluntarily expending funds to terminate the trust, we do not need to decide the issue here.

4. Because the date of insertion of the device could be established, the case fell under the "single-act" exception to the termination-of-treatment rule. *Offerdahl*, 426 N.W.2d at 429. By contrast, where the alleged negligence of a physician who was asked to remove an intrauterine device to enable the plaintiff to conceive a child was the failure to notice the presence of a second such device thought to have been expelled, this court held that the damage—the plaintiff's involuntary inability to become pregnant—occurred at the same time as the negligence and applied the termination-of-treatment rule. *Francis v. Hansing*, 449 N.W.2d 479, 481 (Minn.App.1989), *review denied* (Minn. Feb. 21, 1990).

5. A contrary conclusion could be inferred from a recent decision of this court that held that damage in a medical malpractice case occurred at the time the defendant breached a legal duty toward the plaintiff on the ground that nominal damages are inferred from the fact of the breach. *Zagaros v. Erickson*, 558 N.W.2d 516, 521 (Minn.App.1997), *review denied* (Minn. Apr. 17, 1997). But because a breach of a legal duty is part of every negligence claim, this rule, if broadly applied, would effectively remove the element of damage from the definition of negligence. *See Schweich v. Ziegler, Inc.*, 463 N.W.2d 722, 729 (Minn.1990) (listing elements of negligence, including that "plaintiff did in fact suffer injury"). Similarly, application of *Zagaros* in a legal or accounting malpractice case would amount to adoption of the rule that the statute of limitations begins to run at the time of the negligent act. While a handful of states follow this rule, *see* Ochoa & Wistrich, 24 S.W.U. L.Rev. at 27 n. 126, the supreme court's decision in *Bonhiver* establishes that it is not the law in Minnesota. *See Bonhiver*, 311 Minn. at 117, 248 N.W.2d at 296 (in accountant malpractice case, holding limitation period to begin when damage occurs). We see no basis for distinguishing between legal and accounting malpractice for limitation purposes.

In *Zagaros*, the alleged negligence was a psychologist's failure to inform a patient that she had diagnosed her with a personality disorder that would not improve without treatment and her failure to recommend any such treatment. The patient was thus suffering adverse health effects before the psychologist breached her duty, and the damage resulting from the psychologist's breach was the continuation of the pre-existing injury. Therefore, in order to harmonize *Zagaros* with established law, we construe its holding to be limited to the proposition that when the claimed negligence is in failing to respond to a pre-existing circumstance that is already causing the plaintiff damage and that could have been prevented from continuing to do so absent the defendant's negligence, injury is deemed established at the time that the negligence occurs. We accordingly conclude that *Zagaros* does not affect our holding in this case.

a complete cause of action for legal malpractice, including the element of damage, must accrue in order for the limitation period to begin. Ochoa & Wistrich, 24 S.W.U. L.Rev. at 26–27 & nn. 120–27. But Minnesota is alone among these jurisdictions in not having also either legislatively or judicially adopted a discovery rule, providing that the limitation period does not begin to run until the plaintiffs know or reasonably should have known that their injury was caused by the defendant's negligence.[6] *Compare id. with* Francis M. Dougherty, *When Statute of Limitations Begins to Run Upon Action Against Attorney for Malpractice*, 32 A.L.R.4th 260 §§ 7–8 (1984 & Supp.1997) (defining discovery rule and listing discovery jurisdictions).[7]

In most legal malpractice cases where there is a time lapse between the creation of a risk and resulting harm, courts have found the claim to accrue when the risk manifests in a tangible form. *See, e.g., Bormaster v. Baldridge*, 723 S.W.2d 533, 540 (Mo.Ct.App. 1987) (holding that where attorney negligently drafted amendment to trust, claim accrued when client hired counsel to defend suit challenging amendment); *Zumwalt v. Stephan, Balleisen & Slavin*, 113 Idaho 822, 748 P.2d 406, 408 (Idaho Ct.App.1987) (concluding that where attorney failed to file notice of lis pendens to protect plaintiff's property interest, claim accrued when property conveyed to good-faith purchaser); *Fort Myers Seafood Packers, Inc. v. Steptoe & Johnson*, 381 F.2d 261 (D.C.Cir.1967) (holding that where attorneys failed to ascertain whether plaintiff's boats could legally fish in Venezuelan waters, claim accrued when Venezuela impounded boats). An influential California case, whose holding has been incorporated into that state's statutes, articulates the general rule:

If the allegedly negligent conduct does not cause damage, it generates no cause of

action in tort. The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm—not yet realized—does not suffice to create a cause of action for damages.

\* \* \* \*

The cause of action arises, however, before the client sustains all, or even the greater part, of the damages occasioned by his attorney's negligence. Any appreciable and actual harm flowing from the attorney's negligent conduct establishes a cause of action upon which the client may sue.

*Budd v. Nixen*, 6 Cal.3d 195, 98 Cal.Rptr. 849, 491 P.2d 433, 436 (1971) (citations omitted).

The cases that place the accrual of a claim at the time a risk is created generally involve one of three fact patterns. First, when an attorney negligently allows a limitation period to expire or misses a deadline, most states hold the claim to accrue at the expiration of the limitation period or the date of the deadline. *See, e.g., Basinger v. Sullivan*, 540 N.E.2d 91 (Ind.Ct.App.1989) (concluding that where attorney negligently allowed limitation period to lapse, claim accrued by the time the limitation period ran); *Boehm v. Wheeler*, 65 Wis.2d 668, 223 N.W.2d 536 (1974) (concluding that where attorney missed filing deadline for patent, claim accrued when deadline expired). Second, where a criminal defense attorney negligently fails to inform a client fully about the consequences of a guilty plea, the claim has been held to accrue at the time of the plea rather than when the plea results in an increased punishment for a later offense. *See, e.g., McConico v. Romeo*, 561 So.2d 523, 525 (Ala.1990). Finally, and most relevantly to *Grimm*, where a claim is based on a negligently drafted contract or deed, the

---

**6.** Because the only effect of the discovery rule is to toll the limitation period after an action has already accrued, we do not find cases from such discovery jurisdictions to be inapposite on the issue of when a cause of action accrues. *See Hennekens v. Hoerl*, 160 Wis.2d 144, 465 N.W.2d 812, 816 n. 8 (1991) (explaining that Wisconsin's adoption of discovery rule did not overrule prior precedent establishing when claim accrues).

**7.** A few states apply a pure discovery rule in which the limitation period begins to run when the negligence is discovered regardless of whether damage has occurred. *See* Ochoa & Wistrich, 24 S.W.U. L.Rev. at 27 n. 125. In several jurisdictions, the limitation period begins to run at the time of the negligent act and in a few others at the termination of the lawyer's representation of the client; the remaining states have never considered the issue. *Id.* at 27 nn. 126–27.

claim is usually held to accrue when the document is executed. *See, e.g., Arnall, Golden & Gregory v. Health Serv. Ctrs., Inc.,* 197 Ga.App. 791, 399 S.E.2d 565, 567 (1990) (holding that where contract containing merger clause destroyed preexisting option, claim for negligent drafting accrued when contract executed); *Denzer v. Rouse,* 48 Wis.2d 528, 180 N.W.2d 521 (1970) (concluding that where attorney negligently prepared legal description of property in deed, claim accrued when deed executed).

The Wisconsin Supreme Court has explained that although in that state a claim does not accrue until there is "harm that has already occurred or is reasonably certain to occur in the future," as opposed to "the mere possibility of future harm," damage can occur in the absence of monetary loss if there is an "injury to a legal interest or loss of a legal right." *Hennekens v. Hoerl,* 160 Wis.2d 144, 465 N.W.2d 812, 816 (1991). In each of the three fact patterns discussed above, the claim accrued when the attorney's conduct resulted in the clients "irrevocably fixing their legal position" in some respect. *See Zidell v. Bird,* 692 S.W.2d 550, 558 (Tex.Ct.App.1985). When a limitation period expires, the clients lose their rights to remedies effective on that date; a guilty plea becomes part of a criminal defendant's record on the date it is accepted; and the rights established by a contract or a deed relate back to the time of its execution even where the nature of the rights is not definitively established until a later lawsuit. *Cf. Shideler v. Dwyer,* 275 Ind. 270, 417 N.E.2d 281, 290 (1981) (holding that cause of action for negligently drafted will accrued at testator's death because beneficiary's rights became fixed at that point). In contrast, in a case involving negligent tax advice, no fixed obligation to pay the taxing authority is established unless the authority acts; the risk of harm is "only a logically possible consequence of the defendant's conduct." *Zidell,* 692 S.W.2d at 556.

While recognizing a rule that the fixing of legal rights may constitute damage provides a starting point in explaining *Grimm,* it does not end the inquiry. *Grimm* on its facts is similar to cases in which an attorney negligently fails to include security for a payment in a contract or a deed, and courts are divided over when a claim accrues in such cases because, although the client's rights are fixed by the contract, any actual damage depends on the intervening factor of a purchaser's default. *Compare Ladner v. Inge,* 603 So.2d 1012 (Ala.1992) (holding that where attorney failed to advise clients to obtain security for promissory notes and warranty deeds, claim accrued when notes and deeds executed) *with Myers v. Wood,* 174 Ariz. 434, 850 P.2d 672 (Ariz.Ct.App.1992) (concluding that where attorney falsely represented that individuals other than buyer would provide security for payment for sale of business, claim accrued when buyer defaulted). Indeed, in some cases it is difficult to discern what claim a client could bring based solely on a fixation of legal rights, bearing in mind the general rule that "[n]ominal damages, to vindicate a technical right, cannot be recovered in a negligence action." William L. Prosser & W. Page Keeton, *The Law of Torts,* § 30, at 165 (5th ed.1984);[8] *cf. Zidell,* 692 S.W.2d at 558 (concluding that where attorney had promised buyer of land an extension beyond closing date of contract and then advised sellers to sell to second buyer under standby contract, claim accrued when land was sold under standby contract because rights were fixed with regard to first buyer at that point and not when sellers lost breach of contract suit brought by first buyer).

In resolving this question, we find it significant that the clients' rights in *Grimm* were fixed by the work product that the attorney had been hired to produce. Where an attor-

---

8. The reason for this rule is that because "the action for negligence developed chiefly out of the old form of action on the case, it retained the rule of that action, that proof of damage was an essential part of the plaintiff's case." Prosser & Keeton, § 30, at 165. Minnesota recognizes this common-law rule. *See, e.g., Harding v. Ohio Cas. Ins. Co.,* 230 Minn. 327, 338, 41 N.W.2d 818, 825 (1950) ("It is the damage wrongfully done, and not the conspiracy, that is the gist of the action on the case for conspiracy.") (citation omitted). *Also compare* Restatement (Second) of Torts § 907, cmt. b (1965) (stating that nominal damages may be awarded for nonharmful invasion of interest where harm is not requisite to cause of action) *with Schweich,* 463 N.W.2d at 729 (stating that injury is element of negligence).

ney drafting a contract with a merger clause negligently destroyed a preexisting option by failing to mention it, the Georgia Court of Appeals held that damage had occurred at the time the contract was executed because the client "paid consideration for the option, but did not get it." *Arnall,* 399 S.E.2d at 567. Similarly, the allegation in *Grimm* was in essence that the clients contracted with their attorney to produce a contract for deed with an interest escalator clause and that no such contract for deed was produced. Where an attorney is hired to produce a document that fixes a client's rights in a certain manner and instead produces a document that fixes them differently, the allegation of malpractice in some ways more closely resembles a breach of contract than a tort claim. In contrast with a case in which the attorney's role is purely to advise, such cases do not involve a mere lack of due care under prevailing standards of professionalism; rather, the clients did not receive the product for which they paid. In Minnesota, a cause of action for breach of contract accrues at the time of the breach. *Levin v. C.O.M.B. Co.,* 441 N.W.2d 801, 803 (Minn.1989). A difference in market value is an accepted measure of damages in breach of contract cases. *See, e.g., Asp v. O'Brien,* 277 N.W.2d 382, 384 (Minn.1979) (affirming use of diminution in value method to calculate damages where cost of replacement was found excessive).

We therefore construe the rule established in *Grimm* to be that when a client contracts with an attorney to prepare a document that fixes the client's rights in some respect, a claim based on the negligent drafting of the document accrues when the document is executed because the client is deemed to have suffered damage equal to the difference in market value between the document contracted for, with all associated legal rights, and the document received. But contrary to respondents' argument, where an attorney fails to advise the client of the risk

of a possible decline in value of something other than a document that the attorney was paid to draft, such as the advertising brochure in *Sabes & Richman* or the business here, a legal malpractice claim does not accrue until the thing affected is sold at a lower price than could have been received absent the attorney's negligence, or the risk manifests in some other manner.[9]

In this case, there is no allegation that respondents negligently prepared a document that unfavorably fixed appellants' legal rights; rather, appellants allege that respondents failed to advise them that certain transactions could result in a diminution of the sale value of the preexisting business or subject them to an audit. But, as in *Anderson,* those harms were entirely speculative at the time the transactions took place; an audit might never have occurred, and there is no evidence that Herrmann intended to sell the business. We therefore conclude that *Sabes & Richman,* rather than *Grimm,* controls this case. But appellants concede that they suffered "appreciable and actual harm" before the 1996 audit because they incurred a liability to new accountants in May 1993 for services to terminate the trust. *See Budd,* 98 Cal.Rptr. 849, 491 P.2d at 436–37 (cause of action accrues when "appreciable and actual" harm flows from negligent conduct); *cf. Northwestern Nat'l Ins. Co. v. Osborne,* 610 F.Supp. 126, 128 (E.D.Ky.1985) (holding that legal malpractice claim accrued when plaintiff sustained non-speculative damage in form of billable services from independent counsel retained to follow underlying litigation). We therefore conclude that the statute of limitations on appellants' claim began to run in 1993.

## IV. Policy Considerations

Respondents argue that appellants could have expended money to terminate the trust at any time after the first prohibited transac-

---

9. In other cases in which the client's legal rights are fixed by the attorney's conduct, there may be different measures of damages. For example, where an attorney negligently allows the statute of limitations to expire, the element of damage is implicit in the requirement that the client prove that he or she would have prevailed in the underlying action but for the attorney's conduct. *See*

*Hyduke v. Grant,* 351 N.W.2d 675, 677 (Minn. App.1984) (listing elements of legal malpractice in litigation context). Arguably, there is inherent damage when a client is permanently deprived of the opportunity to obtain a patent by the expiration of a deadline or when a criminal defendant enters a guilty plea; we need not decide those issues here.

tion and that the statute of limitations could be tolled indefinitely if a plaintiff has the power to control when damage occurs and thus prevent the limitation period from running. We recognize the merit of this argument on a policy level, but because there is no allegation in this case that appellants failed to act with due diligence, we need not decide whether a plaintiff's delay in expending time and money to mitigate a risk might affect the running of the limitation period. *Cf. Weston v. Jones*, 160 Minn. 32, 36–37, 199 N.W. 431, 433 (1924) (holding that where cause of action has accrued but right to sue depends on condition precedent, limitation period is not tolled where plaintiff has ability to perform condition precedent).[10]

In summary, we hold that as a general rule in a legal malpractice case based on the attorney's exposure of the client to a risk of harm, the statute of limitations does not begin to run until the harm manifests in some form or the client otherwise suffers pecuniary loss. Although in this case the injury coincided with appellants' discovery of the alleged negligence, we do not intend our holding here to be construed as adoption of the discovery rule. Generally, in discovery jurisdictions, the limitation period begins to run not when the plaintiff discovers the fact of an injury but rather when the plaintiff knows "or in the exercise of reasonable diligence should have known that his injury was caused by the defendant's negligence." *Rayford v. Leffler*, 953 S.W.2d 204, 207 (Tenn. App.1997), *review denied* (Tenn. Sept. 2, 1997); *see also Hennekens*, 465 N.W.2d at 819 (stating that limitation period begins when plaintiff knows or should have discovered "his injury, its nature, its cause, and the identity of the allegedly responsible defendant"). In a 1924 case, the Minnesota Supreme Court held that ignorance of the fact of injury does not toll the limitation period. *See Weston*, 160 Minn. at 36–37, 199 N.W. at 433 (concluding that limitation period was not tolled where plaintiff who had disappeared in

Philippines was unaware that assets due him under trust had been distributed to his heirs based on mistaken finding that plaintiff was dead). But although the manifestation of a latent risk of harm will in many cases coincide with the discovery of that risk, such a coincidence is not inevitable; for example, *Sabes & Richman* placed the accrual of a cause of action at the time of the distribution of the allegedly infringing brochures without regard to when the plaintiffs learned of the distribution. *See also Francis v. Hansing*, 449 N.W.2d 479, 481 (Minn.App.1989) (holding that when doctor who removed intrauterine device in order to allow plaintiff to bear children failed to notice second intrauterine device, claim accrued at time of termination of treatment and not 15 years later when plaintiff discovered reason for her infertility), *review denied* (Minn. Feb. 21, 1990).

As a practical matter, the distinction between the manifestation of a risk and discovery of that manifestation may only make a difference in a case where a plaintiff waits until the last minute to commence an action. But we are not persuaded that the mere fact that in many cases the same result would be reached by applying a discovery-of-injury rule provides sufficient reason for us to reach a different conclusion in this case, which in our view would require a departure from the established principle that in a negligence action harm must be reasonably certain to occur to give rise to a claim for damages. In defining damages for statute of limitations purposes, we not only must balance a plaintiff's rights against a policy of repose, but also we must be mindful of the potential for inviting premature lawsuits based on speculative harms. Absent further direction from the supreme court or the legislature, we conclude that a manifestation-of-risk rule, subject to certain defined exceptions such as that established in *Grimm*, represents both the most logical reading of prior decisions and, within the framework established by

---

**10.** Even if there is no legal bar to delaying an action, a plaintiff's abuse of the principle we establish here might be addressed in some cases by application of the equitable doctrine of laches. *See RES Inv. Co. v. County of Dakota*, 494 N.W.2d 64, 67 (Minn.App.1992) (stating that

laches is equitable defense intended to prevent party who has not been diligent in asserting known right from recovering at expense of party prejudiced by delay), *review denied* (Minn. Feb. 25, 1993).

those decisions, an appropriate balance of competing policy considerations.

## DECISION

Appellants' cause of action for legal malpractice accrued in May 1993, when appellants first suffered actual damage in the form of a liability incurred to their new accountants for terminating the trust. Because their legal malpractice action was commenced within six years after that date, it is not barred by the statute of limitations, and we therefore reverse the district court's grant of summary judgment and remand to allow appellants to pursue their claim.

**Reversed and remanded.**